## WEBER v. MARSHALL et al.

Where, to an action of ejectment, several defenses are set up, some legal and some equitable, it is error for the Court to frame special issues involving these various defenses—legal and equitable—and submit them all together to the jury.

A jury need not be called to pass upon an equitable defense to an action of ejectment. The parties are entitled to a jury upon the legal issues; but as to the equitable defenses the Court sits as a Chancellor, and may or may not, according to its discretion, order issues to a jury.

Arguello v. Edinger, (10 Cal. 159) that where a defense arising from a verbal contract for the sale of the land, accompanied with acts of part performance, is set up to an action of ejectment, the Court must first pass upon this defense, and if, on hearing the evidence, the Court determines the defense to be good, it should enjoin the further prosecution of the action with its decree for a specific performance; and on the other hand, if the Court refuse the relief claimed by defendant, it should call a jury to determine the issue upon the general denial, affirmed.

Where plaintiff in ejectment relies on a Mexican grant, confirmation and patent, and there is no dispute as to the land being within the limits of the patent, a title arising subsequently to the grant upon which the patent issued constitutes no defense, and the jury have only to pass upon the question of damages so far as the legal issues in the case are concerned.

The following verbal agreement for the sale and purchase of land was made between W., claiming the land under a Mexican grant, and M., who was in possession. W. was to choose one referee and M. another, the two to choose a third, they to appraise the value of the land, which M. was to pay W. upon the confirmation of the grant by the U. S. Land Commissioners. The grant was confirmed in 1855, and no offer was made by M. until 1861—when W. brought ejectment for the land—to comply with the terms of the agreement: Held, that under the agreement it was the duty of M., within a reasonable time after the confirmation of the grant by the U. S. Land Commissioners, to notify W. that he was ready to execute the agreement and to appoint the referees; and that his failure to do this for five or six years was fatal to his claim for specific performance.

Weber *v.* Marshall.

*Held, further,* that it was not the duty of W. to notify M. of the confirmation; that the Board of U. S. Land Commissioners being a public tribunal, whose proceedings were open and notorious, and affecting whole communities, and M. being personally interested in the decision upon this grant, the fact of confirmation was not peculiarly within the knowledge of W., and that hence the case is not within the rule requiring notice from the party having peculiar information.

*Held, further,* that the fact that payment for the land was to be made according to the value at the time of the appraisement, and that therefore the delay in executing the agreement was not injurious to W., is insufficient to take the case out of the rule refusing specific performance where there has been unreasonable delay.

The party insisting on specific performance must show himself "eager, prompt, ready and desirous to perform the contract on his part." He must show that he has "used due diligence; or if not, that his negligence arose from some just cause, or has been acquiesced in. It is not necessary for the party resisting performance to show any particular injury or inconvenience; it is sufficient if he has not acquiesced in the negligence of the other party."

Nor does possession by the party seeking performance make the rule different.

*Green* v. *Covillaud* (10 Cal. 327) as to the rule in decreeing specific performance, affirmed.

Doubtful in this case whether the contract was not that the money was to be paid only when it was ascertained that *this particular* land was embraced within the grant confirmed by the proper authorities, and that this could not be known until an approved survey of the premises.

Where a verbal contract for the sale and purchase of land rests not upon proof of any payment of purchase money, but upon proof of the contract and *possession* by the party purchasing and *improvements* made by him, it must clearly appear that the improvements were made with reference to, or were induced by the contract.

The true rule is laid down in *Arguello* v. *Edinger,* (10 Cal. 160) that nothing can be regarded as a part performance to take the case out of the operation of the statute which does not place the party in a situation which is a fraud upon him unless the contract be executed.

The question whether the agreement in this case, for the selection of referees to fix the value of the property, be an agreement capable of specific performance, not decided.

The question whether, if the agreement in this case were proved as alleged, and the possession of the defendant M. were permitted by the plaintiff W. to await the contingency contemplated, to wit: the confirmation, the plaintiff could maintain ejectment without notice to defendant, not decided.

APPEAL from the Fifth District.

Ejectment for two hundred and twenty-five acres of land in San Joaquin county, embraced in a Mexican grant to one Gulnac.

The complaint was filed on the twenty-ninth of March, 1861, at

which time an appeal from the decision of the U. S. District Court affirming the survey of the grant was pending.  The complaint set up the grant, its presentation to the Board of Land Commissioners in May, 1852, its confirmation by the Board in April, 1855, the affirmance of the decision of the Board by the District Court in February, 1858, the survey made by the direction of that Court, and its final approval by the Court in January, 1861, and that the survey was in strict conformity to the decree of the Court.

Defendant's answer admits the confirmation of the grant, but denies that the land in controversy was embraced in its boundaries, or was any part of the land granted to Gulnac ; and avers that the grant was of a specific quantity of land within general boundaries embracing a much larger quantity ; that the land thus granted was not segregated from the public domain by the Government of Mexico, and hence passed under the treaty of 1848 to the Government of the United States as public land; that before and on the twenty-eighth of September, 1850, the land sued for was swamp and overflowed land, and hence passed under the Act of Congress of that date to the State of California; and sets up title in the defendant by purchase in February, 1856, from the State under the Swamp Land Act.

The answer also avers that in June, 1850, defendant Marshall marked out and settled upon the land in controversy as public land and without knowledge of any claim under said grant, and had put improvements thereon of the value of —— dollars, when plaintiff notified him of his claim ; after which said defendant put no more improvements on the land until 1851, when he made a contract with plaintiff by his agent R. P. Hammond, in substance, that " when plaintiff's claim to said tract of land under said grant should be confirmed to plaintiff, under the laws of the United States, he (plaintiff) would sell to said Marshall, and that he (Marshall) would buy of plaintiff said land at a fair price—such price as should be determined upon as the fair market value thereof by three disinterested persons, one to be chosen by plaintiff, another by said Marshall, and the two thus selected to choose a third, said Marshall to take immediate possession of the land ;" that relying on said contract defendant took full possession of the land and erected perma-

nent and valuable improvements at a cost of $6,000, of which plaintiff had knowledge ; that plaintiff recognized defendant's claim to the land under said contract until within the last year ; that plaintiff did not before this suit notify defendant of the confirmation of said grant, nor of his readiness to comply with said contract, nor did he demand of defendant a compliance therewith ; that defendant is ready and offers to comply with the same, but that plaintiff, in fraud of defendant's rights, refuses.    Prayer for a specific performance of the contract, by selecting referees, etc., and in the meantime for an injunction against this suit.

Plaintiff filed a replication denying all the defenses set up in the answer, and particularly that any contract had ever been made for the purchase of the land ; and setting out a patent from the United States, received since the institution of the suit.    The pleadings were verified.

The general facts are : that plaintiff, in December, 1852, was the owner and holder of a Mexican grant for the place called " Campo de las Franceses," in San Joaquin county, containing eleven leagues ; that in May, 1852, he filed his petition for the confirmation of said land by the U. S. Board of Land Commissioners ; and that it was confirmed by the Board in April, 1855, and by the District Court of the United States in May, 1856, and that the Supreme Court of the United States dismissed the appeal taken by the Government from the decree at the December term, 1857.

In February and March, 1858, a survey and plat of the land were made by a Deputy U. S. Surveyor, and approved by the Surveyor General.    In March, 1861, a patent was issued to the plaintiff by the Government for the land as described in the said survey, including the land in controversy.

The land is covered with water for a considerable part of the year, but produces good crops of hay.    The facts as to when Marshall began living on the land, and as to his first knowledge of plaintiff's claim, are about as stated in his answer.    The findings of the jury and the letter of Hammond give the nature of the verbal contract as to the purchase of the land.    Hammond states that the contract was probably made a few weeks before the date

of his letter, hereinafter inserted ; and which puts the number of acres contracted for at one hundred and sixty, or thereabouts. Hammond did not make known to Weber the understanding verbally made with Marshall, nor that he had written the letter of December 26th, 1856.

In 1855, after the confirmation by the Board of Land Commissioners, Hammond conversed with Weber for the first time respecting this understanding.   Marshall never made any response, either to Hammond or to any one else, signifying his assent to the statement as contained in the note of December 26th.   The first time that Marshall ever spoke to Hammond, after 1852, on the subject of the understanding as to the land, was in February or March of 1861.   Marshall knew in April, 1855, of the then confirmation of the title to Weber by the Board of Land Commissioners ; and never, after the confirmation by the Board, offered to appoint a referee to ascertain the price of the land, until the institution of this suit and the filing of his answer thereto on the eleventh day of April, 1861.   It is not pretended that any offer was made by Marshall to carry out the understanding, until his answer was filed ; and the verdict of the jury as to that issue is founded solely on the offer in the answer.   On the second of February, 1856, Marshall purchased the premises from the State as swamp and overflowed lands.

When the cause came on for hearing, plaintiff moved the Court to proceed as a Court of Equity, and first hear and decide the issues upon the equitable defense set up by defendant as to the alleged contract for the purchase of the land, and after such issues were determined, then to hear the remaining issues.   Motion overruled ; and all the issues, both of law and equity, were heard and submitted to the jury together, defendant excepting.

After the evidence was closed, plaintiff asked the Court to instruct the jury, in substance, that there was no competent evidence from which they could find there was a contract of sale and purchase between plaintiff and defendant, because : 1st, the letter by Hammond to Marshall was not signed by plaintiff or Marshall, nor did Marshall ever accept the terms thereof, nor does the letter express the price or consideration to be paid by him ; 2d, after the

confirmation, the price of the land was never fixed between the parties according to the method prescribed in the letter, or otherwise ; 3d, the long time which elapsed between its date and the filing of the answer, without offer by Marshall to fix the price in the manner proposed, is conclusive, in the absence of proof explanatory of and accounting for the delay, that Marshall never assented to the terms of the letter, or if so, that he subsequently abandoned them ; 4th, the contract, if any, was not in writing, expressing the consideration and signed by the parties to be charged thereby. Refused, plaintiff excepting.

Issues of fact were then submitted to the jury, which, with the answers returned thereto, are as follows :

1. Was Richard P. Hammond the agent of the plaintiff Weber in 1851 and 1852, and authorized to contract for the sale of the land in controversy ?

Answer : " Yes."

2. Was there any agreement made between the plaintiff, Weber, by Hammond, as agent or otherwise, and the defendant Marshall, of and concerning the premises in controversy, in the year 1851 or 1852, for the then present or future sale of the said premises by the said Weber to the said Marshall ?   If yes, was such agreement verbal or in writing, and what were the particular terms, stipulations and conditions of the said agreement ?

Answer : " Yes, a verbal one, namely : the plaintiff to choose one referee, the defendant another, and the two to choose a third one, and they to appraise the value of the said land in controversy, the money to be paid at the confirmation of the grant by the Land Commissioners."

3. Did the defendant, after such contract was entered into, occupy the land in controversy, and construct valuable improvements upon it, under the said contract ?

Answer : " Yes."

4. What is the value of the improvements so constructed ?

Answer : " The value of the improvements on the land in controversy amounted to $3,000."

5. Did the plaintiff, Weber, notify the defendant Marshall of the confirmation of his, plaintiff's, title to said land, and offer on his part to comply with the terms of said contract ?

Answer : " No."

6. Did the defendant notify Weber of his readiness to comply with the terms of said contract on his part, and has he named a referee under said contract on his part and notified plaintiff thereof ?

Answer : " Yes."

7. Did the boundaries of the land granted to said Gulnac, by the Governor of California, include the premises in controversy ?

Answer : " Yes."

8. Was the land in controversy subject to annual and periodical overflow, prior to the year 1850, and subsequently ?

Answer : " Yes."

9. Could said land be cultivated and crops raised thereon without reclamation in 1850, or at any time subsequently ?

Answer : " No."

The letter of Hammond to Marshall, which was shown the former when called as a witness by defendant, is as follows :

" STOCKTON, CAL., DEC. 26TH, 1856.

" MY DEAR SIR :

" I am about starting for the Atlantic States, and as I cannot foresee what may occur to myself whilst absent, I deem it proper to leave with you the following memorandum in respect to your property on the Calaveras river ; so that in the event of any accident, my statement may be brought properly into evidence in your behalf.

" I understand that, when the claim of Weber is confirmed by the Land Commissioners, to the land now occupied by yourself, not to exceed one hundred and sixty acres, or thereabouts, you have agreed to pay a fair price for said land ; such price as may be determined upon as fair market value by three disinterested persons— each party to choose one referee, and those two to choose a third.

" Such you will recognize as the substance of our mutual agreement ; it is the same as made with Mr. A. C. Bradford.

(Signed.)        " RICH'D P. HAMMOND."

Upon these findings, the Court decreed a specific performance of the agreement and contract set up in the answer, and an injunction as prayed for ; and that pending the ascertainment of the price of

the land, in the manner named in said contract in accordance with this decree, plaintiff be enjoined from prosecuting his action of ejectment. Plaintiff's motion for a new trial having been overruled, he appeals.

*Hall & Huggins*, for Appellant.

I.    The Court below erred in submitting the special issues upon the equitable defense and the law issues upon the title and right of possession to the same jury at the same time. (*Arguello* v. *Edinger*, 10 Cal. 150 ; *Taylor* v. *Longworth*, 14 Pet. 176.)

II.    The Court erred in refusing the instruction asked, to the effect that the jury could not find from the evidence that there ever was a binding contract between Weber and Marshall for the sale of the land.    (Stat. Frauds, Wood's Dig. art. 396.)    1. The oral understanding and the memorandum of December 26th, 1852, are void, and inoperative as a contract for the sale of the land.    2. If the defendant never held possession under Weber, and never paid any part of the purchase money, (of which last there is no pretense) then there is no part performance which will operate in equity to relieve the case from the operation of the statute.    The single act of part performance on which defendant stands is the alleged taking possession under Weber, of which fact there is not only no proof, but it is really negatived by the admitted fact that Marshall entered and was holding adversely when the understanding was had ; by buying, after confirmation of the grant, an adverse title ; by his silence upon the subject from December 26th, 1852, to March, 1861 ; and finally, by coming in with an answer to this suit on the eleventh of April, 1861, setting up inconsistent defenses, first against the title, then for it, and offering at the date of the answer for the first time to carry the agreement out, when the obligation to make the offer by its terms arose six years before.

Even though possession alone is performance, such a questionable and suspicious possession as this was will not be so regarded. (*Gregory* v. *Mitchell*, 18 Ves. 328 ; *Jarvis* v. *Smith*, 1 Hoff. Ch. R. 470 ; *Thornton* v. *Heirs of Henry*, 2 Scam. 218.)    And with a possession under and in acknowledgment of the agreement, the construction of improvements cannot have effect as in performance of the agreement.

III.   The evidence and findings by the jury are insufficient to authorize the decree.

The question in every case of this nature is: Will the Court, in exercise of a sound judicial discretion, enforce performance ?   Such jurisdiction is never exercised when all the circumstances show that enforcement will operate unjustly and inequitably against the party moved by the decree.   And the rule is: " It requires a much less strength of case on the part of the defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain a bill to enforce a specific performance."   (2 Story's Eq. sec. 769.) It is only when the vendor is unable to do all that he undertakes or is in some other way in default, that the vendee can maintain a bill for specific performance, and then he must not have been in default himself, nor even remiss as to his own compliance.   (Id. sec. 776; *Green* v. *Covillaud,* 10 Cal. 327.)

The express agreement of the parties, the executory character of the same, the fluctuating value of the land itself, and the further facts that no purchase money was ever paid and the long delay of the defendant, all bring the case at bar within the class as to which Courts of Equity hold that time is of the essence of the contract. (*Edgerton* v. *Packham,* 11 Paige Ch. R. 354, 360; *Green* v. *Covillaud,* 10 Cal. 328, 329.)

*D. S. Terry,* for Respondents.

I.   The first error assigned is in submitting the whole case on special issues to the jury.   But it was competent for the Court to determine the practice to be pursued in disposing of the cases before it, and in this case there has been no abuse of this discretion ; it is the only proper manner of disposing of cases involving several issues.   (*Brewster* v. *Bours,* 8 Cal. 501.)

II.   It was not error for the Court to refuse to instruct the jury to the effect that they could not find from the evidence that a binding contract for the purchase of the land had been made by plaintiff and defendant.

Instructions upon questions of law are not necessary or proper to be given on trials of special issues of fact.   The issues submitted to the jury were: Whether there was an agreement; was it verbal

or written, and what were its terms? Upon the answer being re-
turned, the Court would decide as matter of law whether the agree-
ment was binding.

III.    The findings and evidence support the decree of the
Court. (*Arguello* v. *Edinger*, 10 Cal. 150.)   In this case, as in
that, defendant claims under a parol contract for the purchase of
land followed by continuous and uninterrupted possession by the
vendee, and the construction of improvements equal in value to the
land.    The occupation of defendant under the contract was ex-
tended over a period of more than eight years, during all of which
time it does not appear that he was ever warned of the intention of
plaintiff to repudiate his agreement, until the service upon him of
the complaint in this case.    There is no attempt to prove a denial
of plaintiff's title, though such denial was charged in the replica-
tion, and the possession must be presumed to be in subordination to
the title, unless the contrary is clearly shown.

The facts as found by the jury from the evidence fully bring this
case within the rule laid down in *Arguello* v. *Edinger*.   This case
is sought be distinguished from *Arguello* v. *Edinger*, because the
defendant entered into possession without permission of plaintiff and
without notice of his title, actual or constructive, before the con-
tract was entered into.    There is no foundation in law for this dis-
tinction; the defendant had no other right of possession than that
derived from his contract with plaintiff, and his possession must be
presumed to be under it. (*Gregory* v. *Mighell*, 18 Ves. 228 ;
*Conroy* v. *Caulfield*, 2 Ball & Beatty, 272.)

IV.    The objection that the letter of Hammond is not such a
written memorandum as the statute requires to take the case out of
the Statute of Frauds is not controverted.    It was not introduced
as such memorandum, but as an admission on the part of the agent
of plaintiff of the verbal agreement set out in the answer, and was
offered merely to enable Hammond, the witness, to refresh his
memory.    For the purpose of the case we admit that the letter
was not such a memorandum.    We rely for the affirmance of the
judgment upon the power and duty of the Court to decree the
specific performance of a verbal contract upon the facts shown by
the record.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

Ejectment for a tract of land in San Joaquin county.

The defendant, Marshall, sets up, against a complaint in the common form, several defenses—some legal and one equitable—the last being that a parol contract had been made between him and plaintiff for the land, and that having complied with the terms of the agreement on his part, he is entitled to, and, by way of cross action, prays a specific performance. Special issues were framed involving these various defenses, legal and equitable, and all submitted together to the jury.

1. This was irregular. The equitable and legal matter should be kept distinct and separate, else confusion, embarrassments and delays must ensue. We laid down the proper mode of proceeding in the case of *Arguello* v. *Edinger* (10 Cal. 159). " The defense arising from a verbal contract for the sale of land, accompanied with acts of part performance, taking the contract from the operation of the statute, is permissible, under our system of practice, to an action of ejectment for the recovery of the premises. The only effect of this mode of asserting the rights of the defendants, instead of by a bill in equity, is to require the Court to pass upon the questions raised by the answer in the first instance. If upon hearing the evidence, the Court should determine there was ground for relief, it would enjoin the further prosecution of the action with its decree for a specific performance ; and on the other hand, if it should refuse the relief, it would call a jury to determine the issue upon a general denial. ( *Thayer* v. *White*, 3 Cal. 228 ; *Clary* v. *Goodman*, 2 Kernan, 266 ; *Tibeau* v. *Tibeau*, 19 Mo. 78.) "

It does not by any means follow that a jury must be called to pass upon an equitable defense to an action of ejectment. The parties are entitled to a trial by jury upon the legal issues ; but the Court, sitting to administer equitable relief, either by way of defense to an action of ejectment, or affirmatively, sits as a chancellor, and in the exercise of equitable powers, may or may not order an issue or issues to a jury in its discretion ; but in a great majority of cases the Judge can as well pass upon the facts as a jury, and may do so

30

with a great deal less delay and expense.    It is only when the evidence is very contradictory, and the question turns on the relative credibility of witnesses, or in such exceptional instances that the chancellor calls in the aid of a jury to assist him in sifting and ascertaining the facts.

2. In this case, the plaintiff standing upon his grant, confirmation and patent, and there being no dispute that the land sued for was within the limits of the patent, there was nothing for the jury to find upon the legal part of the case except the damages ; for we have already settled the question as to the effect of the patent when opposed to claims or titles arising subsequently to the grants on which they issued.    (See *Teschemacher* v. *Thompson*, 18 Cal. 11 ; *Leese and Vallejo* v. *Clark*, Id. 535.)

3. The main question is as to the equitable title to relief set up by the defendant.    The jury returned a verdict upon the special issues submitted, and upon this verdict the Court made a decree affirming the right of the defendant to a specific performance of the parol agreement, and decreeing such performance.    As the decree rests upon these findings, it is only necessary to look to them in connection with the testimony to see if they sustain the decree. The jury found that the oral agreement was to this effect : That the plaintiff was to choose one referee, the defendant another, and the two to choose a third, and they to appraise the value of the land in controversy, the money to be paid at the confirmation of the grant by the Land Commissioners.    It seems that the land was confirmed by the Commissioners in 1855, and no offer was made until 1861, after this suit was brought, of compliance with these terms.    Taking this finding to correctly represent the contract, the case made by the defendant would seem to fall within the doctrine of *Green* v. *Covillaud* (10 Cal. 324).    See also *Taylor* v. *Longworth* (14 Pet. 172).    An ingenious effort is made by the learned counsel for the respondent to distinguish this case from that.    It is argued that it was the duty of Weber to notify Marshall of this confirmation, which was not done, and that Marshall was in no default until such notification.    Waiving all consideration of the fact that it is in proof that Marshall knew shortly after it was made of this decree, it cannot be held that this fact was one peculiarly within the knowl-

edge of Weber, and therefore within the rule which requires notice
in such cases from the party having the peculiar information.   On
the contrary, this Board was a public tribunal, whose proceedings
were open and notorious.   General interest and inquiry were ex-
cited upon these matters, which involved large interests, affecting
whole communities.   It is almost impossible that any intelligent
man, personally interested in or affected by the decision upon a
Mexican grant, in so large and populous a county as San Joaquin,
should not have been apprized, shortly after its rendition, of a de-
cree affirming or rejecting the claim.   We do not perceive, there-
fore, that this circumstance can affect the principle.   It is argued,
too, that in this case payment was to be made according to the
value at the time of the appraisement, and therefore the delay to
execute the agreement was not injurious to Weber, and that this
distinguishes the case from that of *Green* v. *Covillaud* and that
class of cases.   But there is more plausibility than soundness in
this view.   The party insisting on specific performance must show
himself " eager, prompt, ready and desirous to perform the contract
on his part."    *    *    " It is incumbent upon the party asking spe-
cific performance to show that he had used due diligence ; or if not,
that his negligence arose from some just cause, or had been ac-
quiesced in.   It is not necessary for the party resisting the per-
formance to show any particular injury or inconvenience ; it is
sufficient if he has not acquiesced in the negligence of the other
party." (*Benedict* v. *Lynch*, 1 Johns. Ch. 373 ; *Green* v. *Covil-
laud*, 10 Cal. 327.)   Nor does possession by the party seeking per-
formance make the rule different.   (See *Anthony* v. *Leftwick*, 3
Rand. 246.)   So in *Taylor* v. *Longworth* (14 Pet. 172).   The
rule is thus stated : " And even when time is not thus, either ex-
pressly or impliedly, of the essence of the contract ; if the party
seeking a specific performance has been guilty of gross laches, or
has been inexcusably negligent in performing the contract on his
part, or if there has, in the intermediate periods, been a material
change in circumstances affecting the rights, interests or obligations
of the parties—in all such cases Courts of Equity will refuse to
decree any specific performance upon the plain ground that it
would be inequitable and unjust.   But except under circumstances

of this sort, or of an analogous nature, time is not treated by Courts of Equity as of the essence of contracts, and relief will be given to the party who seeks it, if he has not been grossly negligent and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases the Court expects the party to make out a case free from all doubt, and to · show that the relief he asks is, under all the circumstances, equitable, and *to account in a reasonable manner for his delay and apparent omission of duty;* and in *Green* v. *Covillaud,* referring to this doctrine affirmed in *Brown* v. *Covillaud,* (6 Cal.) we say : "It will thus be seen that, so far from giving countenance to the idea that a party may wait for years, or even months, without fulfilling any part of his agreements, and then when he thinks it his interest to intervene, come in and claim as an arbitrary right a literal enforcement of the contract which he has broken, it is laid down by the Court that in every case of delay, a reasonable excuse for that delay must be given. In this case, as we have shown, this Court has decided there was no excuse at all."

We think, therefore, that it became the duty of Marshall, within a reasonable time after the confirmation by the Land Commission of this claim, to notify Weber that he was ready to execute the agreement and to appoint the referees, and that a failure to do this for five or six years was fatal to his claim for performance.

All this is said on the supposition that the jury were right in their finding that the contract was for the payment of the money at the time of the confirmation. This is not clear to us. Possibly the more reasonable construction of the contract is, that the money was not to be paid until it was ascertained that *this particular land* was embraced by the grant confirmed by the proper authorities, and that this could not be known until an approved survey of the premises.

In reference to the parol agreement, it may be remarked that there is no pretense of any payment of purchase money. It rests as a valid, enforcable contract upon the oral proof and the possession and improvements made by Marshall. In such cases it should very clearly appear that the improvements were made in reference to or induced by the contract. The rule is thus stated in *Arguello*

Weber *v.* Marshall.

v. *Edinger*, (10 Cal. 160) in which case it was said: " What acts shall be deemed a part performance is a matter upon which there has been much discussion and some conflict of opinion.    The true rule, gathered from the adjudged cases, is that nothing can be regarded as a part performance, to take the case out of the operation of the statute, which does not place the party in a situation which is a fraud upon him unless the contract be executed.    Taking possession is held such act of part performance, as the party might be treated as a trespasser if he could not invoke the protection of the contract.    And if, upon the faith of the contract, the purchaser should proceed to make valuable improvements, the most palpable fraud would be perpetrated if the vendor were permitted to withdraw from its execution."    (*Clinan* v. *Cooke*, 1 Sch. & Lef. 41; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 284; *Lowry* v. *Tew*, 3 Barb. 413; Story's Eq. 761.)

Nor is it deemed necessary, as the point has not been argued, to consider whether this agreement for the selection of referees to affix the value of the property be an agreement capable of specific enforcement.    (See 1 Ala. 99; 3 Parke, 241.)

Nor is it necessary to decide whether, if the agreement be proved as alleged, and the possession of the defendant permitted by the plaintiff to await the contingency contemplated, the plaintiff could maintain this action of ejectment without notice to the defendant.

For the error in the decree, based upon the findings of the jury, the decree is reversed and the cause remanded for a new trial.