[No. 12627. Department One. — June 2, 1890.]

## PHILIP CALANCHINI, APPELLANT, *v.* LEWIS P. BRANSTETTER, RESPONDENT.

84  249
94  421
84  249
96  613
84  249
d142 349

SPECIFIC PERFORMANCE — VERBAL CONTRACT OF SALE — STATUTE OF FRAUDS — PART PERFORMANCE. — A verbal contract for the sale of land is taken out of the operation of the statute of frauds, and will be specifically enforced, when there has been a part performance of the contract by the taking of actual possession of the land by the vendee with the consent of the vendor, or by the making of valuable improvements upon the land on the faith of the contract.

ID. — MUTUALITY OF CONTRACT — OPTION AND ELECTION OF VENDEE. — The general rule that contracts of sale must be mutual, or courts of equity will not enforce them, is subject to the exception that a contract for the sale of real estate at the option of the vendee only, upon election and notice, may be specifically enforced; and the refusal of the vendor to accept the purchase-money will not destroy the mutuality, though the vendee could thereupon withdraw his election.

ID. — ORAL AGREEMENT AS TO TEMPORARY DIVISION LINE — OPTION TO PURCHASE — RIGHTS OF ASSIGNEE. — A verbal contract between adjoining owners of land, providing that if a division line temporarily agreed upon should be found incorrect by subsequent survey, the owner who should occupy and clear the land of the other up to the agreed line should have the option to purchase the same at its value when uncleared, or to claim payment of the cost of clearing, as he may elect, may be specifically enforced by the assignee of the owner having the option if the land was possessed, cleared and improved by his assignor, and the assignee has tendered payment and demanded a conveyance of the land.

Id. — TIME FOR EXERCISE OF OPTION — RUNNING OF STATUTE OF LIMITA-
TIONS. — A cause of action for the enforcement of such contract does
not accrue so as to put the statute of limitations in motion until the
true line is determined, and it is known which one of the parties is
called upon to exercise his option, and to make the election provided for.

Id. — LACHES — ACQUIESCENCE IN DELAY. — No such laches is imputable
to the party seeking specific performance of such contract as will bar
his right thereto by reason of a delay of more than three years before
any attempt to ascertain the true line, and of more than four years be-
fore suit for specific performance, if no time was fixed by the contract
for making the proposed survey, and the burden of making it was not
cast upon either of the contracting parties, and both of them acquiesced
in the delay as to the ascertainment of the true line.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial.

The facts are stated in the opinion.

*Chamberlin & McGowan,* and *P. F. Hart,* for Appellant.

*S. M. Buck,* for Respondent.

BELCHER, C. C. — This is an action to enforce the specific performance of an oral agreement for the sale of land.

The land in controversy is a strip containing about eight acres, which lies along the south side and is a part of a certain forty-acre government subdivision of land in Humboldt County.

The facts of the case, as found by the court, and undisputed, are as follows: One Baldwin owned the forty-acre tract above mentioned, and one Chamberlin owned the forty-acre tract adjoining it on the south. The line dividing their lands was undetermined and uncertain, and they disagreed as to where the true line should be located. Thereupon, in the month of July, 1882, they entered into an oral agreement that a line commencing at an agreed point on the east should be extended west through their lands, and that each owner should hold, possess, and improve up to that line; and if it should be

determined by a subsequent survey that the said line was not the true line dividing their respective tracts, but was too far north, then Chamberlin was to pay Baldwin the then value, in its uncleared state, of all the land lying between the temporary and the true line, or Baldwin was to pay Chamberlin the cost of clearing the same, as the latter might elect; and if the said line should be too far south, then Baldwin was to have the same option in regard to purchasing or receiving pay.

Immediately after making this agreement, Chamberlin took possession of the land in controversy, claiming a right to its possession under the agreement, and also claiming that it was a part of his forty-acre tract, and that the temporary line agreed upon was the true line. Under such claim of ownership, and also relying upon the said oral agreement, he cut the brush from the land and constructed a small ditch thereon at a cost of about twenty-five dollars per acre.

Subsequently, Baldwin conveyed his tract to Rachael Branstetter, who thereafter conveyed it to the defendant, and both took with notice of the before-mentioned agreement. And in July, 1884, Chamberlin conveyed his tract to the plaintiff, and placed him in possession of all the land in controversy here.

At no time did Baldwin or defendant or his grantor tender to Chamberlin or plaintiff a deed of the land in controversy, or call upon Chamberlin or plaintiff to exercise the option of paying for the land or receiving pay for clearing the same; nor did Chamberlin, at any time, or plaintiff, prior to December 27, 1886, ever elect to pay for the land and receive a deed therefor; nor did the parties mutually determine, or attempt to determine, by agreement, the true boundary line dividing their tracts. The defendant never admitted that the agreement between Baldwin and Chamberlin was as above stated, and always claimed that Baldwin only agreed to pay for clearing the land, while Chamberlin and the plaintiff, at all

times prior to September 25, 1886, always insisted that the temporary line established in July, 1882, was the true line, and that the land in dispute was a part of their forty-acre tract.

In September, 1885, the defendant, after first offering to pay both Chamberlin and the plaintiff the cost of clearing and improving the land in controversy, but without requesting either of them to make, or join in making, a survey to determine the true line, commenced an action of ejectment against the plaintiff for the recovery thereof.  In that action the defendant, plaintiff here, appeared by Chamberlin as his attorney, and for a defense denied that the land sued for was any part of the plaintiff's tract, and for a further defense set up and claimed a right to the possesssion of the land under and by virtue of the oral agreement now sought to be enforced.  It was found by the court that the defendant in the action had not succeeded to the rights of Chamberlin under the agreement, and therefore had no equitable claim to be enforced thereunder.  Judgment was entered in the action in favor of the plaintiff therein on the 25th of September, 1886, and the true boundary line dividing the said two tracts of land was thereby first adjudicated and determined.

Thereafter, on the 20th of December, 1886, Chamberlin assigned all his rights under the oral agreement to the plaintiff herein, and on the 27th of the same month the latter gave defendant notice that he had succeeded to the rights of Chamberlin under the agreement, and that he elected to pay the value of the land in controversy in pursuance thereof, and he then offered to pay the same, and tendered to defendant a bargain and sale deed of the land, and requested him to execute the same, but defendant refused to receive such payment or to execute the deed.

From the date of the agreement down to the time when the judgment in the action of ejectment was entered,

Chamberlin, and plaintiff, as his successor, remained in possession of the land in controversy, and neither of them ever attempted to ascertain whether the line temporarily agreed upon as the boundary line between their respective tracts was the true line or not.

Upon these facts the court found as conclusions of law, — 1. That the plaintiff was not entitled to a judgment requiring the defendant to specifically perform the oral agreement; 2. That plaintiff's cause of action was barred by the provisions of section 343 of the Code of Civil Procedure; and 3. That plaintiff and his grantor were guilty of laches in not earlier electing to purchase the land in dispute.

Judgment was then given for defendant, from which, and from an order denying a new trial, plaintiff appealed.

1. It is settled law that a verbal contract for the sale of land is taken out of the operation of the statute of frauds and may be specifically enforced when there has been a part performance of the contract. And the taking of actual possession of the land by the vendee, with the consent of the vendor, is held to be a sufficient act of part performance. So the making of valuable improvements upon the land, on the faith of the contract, is held to be a part performance. The ground upon which this doctrine is based is, that the vendee might be treated as a trespasser, and thus placed in a situation which would be a fraud upon him, if he could not invoke the protection of the contract. (*Arguello* v. *Edinger*, 10 Cal. 150; Pomeroy on Specific Performance, secs. 115, 126.)

2. It is contended for respondent that the contract involved in this case was not mutual, and that it cannot therefore be enforced. The general rule undoubtedly is, that contracts must be mutual, or courts of equity will not enforce them. But there are many exceptions to this rule, one of which only need be noticed. It is stated by the text-writers, and fully sustained by the

authorities, that "a contract for the sale of real estate, at the option of the vendee only, upon election and notice, may not only be specifically enforced, but the refusal of the vendor to accept the purchase-money will not destroy the mutuality, though the vendee could thereupon withdraw his election." (Waterman on Specific Performance, sec. 200; Pomeroy on Specific Performance, sec. 169; *Hall* v. *Center*, 40 Cal. 63; *Ballard* v. *Carr*, 48 Cal. 74.) In view of the authorities upon the subject, the agreement under consideration here was not, in our opinion, incapable of enforcement for want of mutuality.

3. It is further contended that the court below rightly found that the action was barred by the statute of limitations. But when did the statute begin to run? The agreement was made in July, 1882, and this action was commenced a little more than four years thereafter. The parties were evidently induced to make the agreement because the dividing line between their lands was unknown, and they wished to avoid disputes and complications in consequence thereof. By the agreement it was provided that each party should exercise his option to pay for the land, or take pay for the improvements placed on it, when it should be determined by a subsequent survey that the temporary line agreed upon was not the true line. No time was fixed for making the survey, and the burden of making it was not cast upon either of the contracting parties. And, so far as appears, no survey was ever made. Chamberlin took possession of the land in controversy with the consent and approval of Baldwin, and he and his grantee so held it until the action of ejectment was commenced. In the mean time, so far as appears, neither party made any efforts or took any steps to determine the true line, or did any act to prevent such determination, or called upon the other to make the election provided for in the agreement, or gave any notice that the agreement was

terminated, or would be terminated at any given date. Both parties seem to have acquiesced in the delay. When the judgment in the ejectment suit was rendered, it was first ascertained that the temporary line was not the true line, and thereupon the assignee of Chamberlin, within a reasonable time, served notice that he had succeeded to Chamberlin's rights under the agreement, and that he had elected to take the land, and he then offered to pay for the same. Now, until the true line was determined, how could it be known which one of the contracting parties owned the land in controversy, or which one of them was called upon to make the election provided for? And, under such circumstances, how could a cause of action accrue, so as to put the statute of limitations in motion, until the true line was determined, and one or the other of the parties was called upon to exercise his option?

It seems to us that the statute did not begin to run before the action of ejectment was commenced, if it did then, and if we are right in this, the action was clearly not barred.

4. Had the plaintiff and his grantor been guilty of such laches as should deprive plaintiff of the relief which he would otherwise be entitled to?

In *Weber* v. *Marshall,* 19 Cal. 459, it is said: "It is incumbent upon the party asking specific performance to show that he had used due diligence; or if not, that his negligence arose from some just cause, or had been acquiesced in. It is not necessary for the party resisting the performance to show any particular injury or inconvenience; it is sufficient if he has not acquiesced in the negligence of the other party (citing authorities). Nor does possession by the party seeking performance make the rule different." And in *Fowler* v. *Sutherland,* 68 Cal. 417, the same rule is declared.

Here, as we have seen, the duty of making the survey and determining the true line rested as much upon

Baldwin and his grantee as upon Chamberlin and his grantee, and the delay was acquiesced in by both sides. The delay on the part of Chamberlin and his grantee may be accounted for by the fact that they claimed and believed, until the judgment in ejectment was rendered, that the temporary line was the true line, and that the land in controversy was a part of their tract.

It seems to us, therefore, that the case, under the circumstances shown, does not come within the rule as to laches, and that to deny the plaintiff any relief because *he* did not sooner act would be inequitable and unjust.

We therefore advise that the judgment and order be reversed, and the cause remanded for a new trial.

VANCLIEF, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

Hearing in Bank denied.