[No. 14648.    Department One. — December 2, 1892.]

## PHILIP CALANCHINI, RESPONDENT, v. LEWIS P. BRANSTETTER, APPELLANT.

VENDOR AND PURCHASER — BONA FIDE PURCHASER — NOTICE — FINDING AGAINST EVIDENCE. — Where the facts indicate that it was impossible that a purchaser of land in good faith and for value had notice of an oral agreement to purchase part of the land alleged to have been made between his grantor and the grantor of the adjoining land, a finding that he had notice of such agreement cannot be sustained, and a judgment enforcing the agreement against him will be reversed.

ID. — POSSESSION AS NOTICE — NEGLECT OF INQUIRY. — Where it appears that at the time of defendant's purchase from his grantor the plaintiff in possession of the adjoining land was a purchaser of such land without any assignment of the oral agreement claimed by his grantor, and was a stranger to such claim, having no interest in the alleged oral agreement and no knowledge of its existence, the plaintiff's possession does not constitute notice, and his grantor not being then in possession or making any claim to the land, it is not negligence for the defendant not to have inquired of such grantor.

EVIDENCE — JUDGMENT ROLL — WAIVER OF OBJECTION. — Where a judgment roll is erroneously received in evidence on behalf of the plaintiff, upon objection of the defendant, the defendant waives his right to object to the ruling, if he subsequently offers the same judgment roll in evidence as a bar to the action.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order refusing a new trial.

The principal facts are stated in the opinion of the court rendered upon the former appeal, and reported in 84 Cal. 250–253. Further facts are stated in the opinion of the court upon this appeal.

*S. M. Buck*, and *W. C. Belcher*, for Appellant.

*J. D. H. Chamberlin*, and *S. M. Buck*, for Respondent.

The COURT. — This is the second appeal in this case. The first (84 Cal. 249) was by the plaintiff from a judgment against him, in which a new trial was awarded. This appeal is by the defendant from a judgment against him, and from an order refusing him a new trial.

Upon the last trial, the court adopted the former findings of fact, adding one or two others. The evidence upon the first trial was, for convenience, read on the second trial, although there was some little additional testimony.

The facts of the case are substantially as stated in the opinion rendered on the former appeal. In some respects, however, they are presented in a different aspect, owing to the fact that the first appeal was by the plaintiff, and this is by the defendant. At the first trial, the facts were found generally as claimed by the plaintiff, but were held not to warrant a judgment in his favor. Defendant, being then respondent, could not object to the sufficiency of the evidence to sustain the findings, or bring up any evidence except such as related to the points made by plaintiff in his motion for a new trial. While, therefore, the opinion rendered upon the first appeal has become the law of the case, and will control here so far as it appears that the same points are presented upon the same facts, there are in this appeal many questions not then considered, and some that were then passed upon are now presented in a new light.

In 1882, the grantor of plaintiff, Chamberlin, was the owner of a tract of forty acres of swamp and overflowed land adjoining and south of a similar tract owned by

Baldwin, from whom defendant derives his title. The land was wet and thickly covered with brush, so that it was difficult to make an accurate survey of it. The boundary between the tracts was a quarter-section line. The owners of adjoining tracts of similar lands had fenced along what was believed to be this quarter-section line, and it was easy to determine about where the line, as fenced, would divide the said tracts if it were extended. Chamberlin, however, desiring to reclaim his land, caused a survey to be made, which located the boundary some eighteen or twenty rods south of the line indicated by neighboring fences. This was in July, 1882. Both Chamberlin and Baldwin were present when the survey was made. No marks or stakes or other evidence of the government survey were found on the line between these tracts. Chamberlin then stoutly maintained that the boundary indicated by the neighboring fences was the true boundary, while Baldwin claimed according to the survey. A compromise was then effected, and it was agreed that the line indicated by the neighboring fences should temporarily divide their possessions. The agreement was oral, and Chamberlin and Baldwin differ materially as to its terms; from this difference this litigation has arisen.

This suit is founded upon Chamberlin's version, which is, that it was agreed that when the true line was found, whichever was found to have in possession land belonging to the other should have the option either to buy such land at its value then in its unreclaimed condition or to surrender it upon being paid the cost of reclaiming.

Baldwin, on the other hand, testified that when the land was cleared so the line could be accurately surveyed, it was agreed, simply, to use his own language, that " I would pay him by the acre for all he cut over the line after the line was regularly established." He denies that Chamberlin was to have the privilege of purchasing.

After the compromise, the parties proceeded to dig a

trench and build a fence along the agreed line, and in the following spring, 1883, Chamberlin reclaimed his land up to the conventional line, which included the demanded premises.

November 3, 1883, Baldwin conveyed his land to Rachel Branstetter.

July 3, 1884, Chamberlin sold and conveyed his tract to plaintiff, describing it as the northwest quarter of the southwest quarter of section 7, etc.; this did not in terms include the land in controversy, and the contract was not assigned to plaintiff. In fact, Calanchini'was not told of the agreement. On the contrary, Chamberlin told him that the fence was on the line, and that his title under the patent covered all the land.

Defendant acquired the Baldwin tract December 31, 1884, paying therefor seventy dollars per acre. He had no actual knowledge of the alleged oral agreement, except that he heard Baldwin's version.

He did not know that any different claim was asserted, either by Chamberlin or Calanchini, and supposed that his right to the land when the boundary was settled, upon paying the cost of clearing, was admitted.

Shortly after his purchase, defendant had the land surveyed, and then the original government corners, with evidence of the original survey in marks upon the ground, were found. Branstetter then called upon Calanchini, informed him of the survey and of the true boundary, and demanded possession of his land, offering to pay the cost of improvements made upon the land. Calanchini denied that he had in possession any land belonging to Branstetter, and all knowledge of any contract in regard to it. He claimed that he had bought from Chamberlin up to the fence.

Defendant then called upon Chamberlin and offered to pay him for clearing the land, according to the contract between Chamberlin and Baldwin, as he understood it.

There is some difference between the witnesses as to what transpired there, but it is certain that no hint was given then by Chamberlin that he understood the oral

contract differently. No claim of a right to purchase was asserted by either Chamberlin or Calanchini.

The court found as a fact that the agreement was as claimed by Chamberlin, and "that both the said Rachel Branstetter and defendant took the conveyance of said land with notice of the agreement made between said Baldwin and Chamberlin."

Whether defendant was a purchaser in good faith and for value was an issue in the case, and this finding is attacked as not supported by the evidence.

Defendant testified that he had never heard of any such agreement, and there is no evidence which tends to show that he had. On the contrary, the facts seem to indicate that it was impossible that he should have had actual knowledge, for Baldwin testified that he had never heard of the agreement for an option to purchase, and Chamberlin seems equally positive that he never mentioned it.

Was plaintiff's possession, then, sufficient to impart notice?

Plainly not. Plaintiff was then a stranger to the claim, having no interest in the alleged agreement, and had he been asked, could not have told of it, for he had never heard of any such alleged agreement himself. For both reasons, such possession does not constitute notice. (Wade on Notice, sec. 289; *Willard* v. *Taylor*, 8 Wall. 571; *Emeric* v. *Alvarado*, 90 Cal. 473.)

Chamberlin was not then in possession, and made no claim to the land, and not to have inquired of him was not negligence. Had such inquiries been made, however, it is evident from Chamberlin's testimony at the trial that they would have been unavailing. His testimony was, that from the time that he took possession, he never admitted that any of the land in controversy belonged to Baldwin; that he always claimed the land, and supposed that he could hold it adversely to the world, until it was decided in court that it belonged to the defendant; that until the suit of the present defendant against the plaintiff herein, he never admitted that

he was liable to pay for any portion of this land, or claimed any rights under the so-called agreement.

This finding is therefore not sustained by the evidence, and for this reason the judgment and order must be reversed. As the cause must be tried anew, it is proper to notice an exception taken to the ruling of the court upon the admission of certain evidence.

On the trial of the cause, the plaintiff offered in evidence the judgment roll in the case of *Branstetter* v. *Calanchini* for the purpose of proving the oral agreement alleged in his complaint. The defendant objected to the introduction of this evidence, as incompetent, for certain reasons represented by him at length, and now assigns as error the action of the court in overruling his objections. The ruling of the court upon the offer of this evidence was erroneous, but as the defendant himself afterwards offered the same judgment roll in evidence as a bar to the present action, he waived the right to question the action of the court in previously admitting it.

The judgment and order are reversed, and a new trial ordered.