[Civ. No. 3820.   Fourth Dist.   Oct. 25, 1948.]

NEAL M. ENGASSER et al., Respondents, v. THOMAS L. JONES et al., Appellants.

172

Shafer & Grimm for Appellants.

Alva D. McGuire for Respondents.

GRIFFIN, J.—Plaintiffs instituted this action against defendants to compel specific performance of a claimed oral agreement to sell certain real property located at Nuevo, in Riverside County. It is alleged that plaintiffs paid defendants $1,000 on account of the purchase price, were let into

possession of the property, and still occupy it under an oral agreement; that defendants refused to perform their part of the agreement; and pray that if specific performance cannot be enforced judgment be awarded in favor of plaintiffs against defendants for such damages as they have sustained by reason of the breach of the agreement. The claimed agreement also involved the sale of one share of stock of the Nuevo Water Company as a part of the same transaction.

Defendants answered and claimed that on July 7, 1945, they did "orally agree to enter into a written agreement to transfer such interest as they had in the property," but only by way of "quitclaim deed." They alleged that no agreement was ever reduced to writing and signed by the parties; that defendants offered to deliver such a quitclaim deed to plaintiffs upon the execution of a written agreement but that plaintiffs refused to accept any form of deed except a grant deed. Defendants likewise claimed that plaintiffs have therefore defaulted under their agreement and that defendants are thereby excused from performance. They admitted payment of $1,000 on account of the down payment and two payments of $35 per month plus interest, amounting to $95. In their amended answer they contended that the oral agreement to sell the real property was invalid and unenforceable under the provisions of section 1624, subdivision 4 of the Civil Code. They pray that plaintiffs take nothing under their complaint. By way of cross-complaint they seek possession of the property, damages in the sum of $5,000 for wrongfully withholding it and $1,000 as the value of rents.

Defendants apparently, by a quitclaim deed from an heir to the Boyer estate, acquired an old nine-room house known as the "haunted house." They advertised it for sale in a Los Angeles paper, priced at $3,500, with $800 down payment. Plaintiffs answered the advertisement and visited the property. At that time plaintiffs claimed that defendants orally agreed to sell the property at $3,500 with a $1,000 down payment and payments of $35 per month plus interest; that defendants agreed to go into escrow and furnish clear title to the property. Plaintiffs made some investigation as to defendants' claimed title and they state that defendant Mr. Jones told them that he had paid an attorney $25 on account to clear up his title to the property and that he should have it ready by this time and that he would call on the attorney and obtain the necessary papers; that thereafter they all went to an escrow office in

Compton, where plaintiffs had money in another escrow, and they were told that the title company could not issue a certificate of title based on the quitclaim deed; that since defendants had only a quitclaim deed they should see an attorney to draw an agreement of sale, allowing defendants time in which to clear the title; that defendant Jones suggested a period of two months in which he could finish clearing his title; that defendants were then paid $1,000 out of their escrow account; that they went to one attorney who drew up some kind of an agreement but which proved to be unsatisfactory; that defendants put plaintiffs in possession of the ranch under the oral agreement; that they had paid drayage charges for moving from Compton, and had purchased some of defendants' tenant's furniture in the house to appease the tenant and to effect an early occupancy of the premises by them; that another written agreement was tentatively drawn by another attorney which they claimed was not in accordance with the terms of the oral agreement, and a third agreement was to be drawn up by an attorney for plaintiffs which would provide for a warranty deed. This did not please defendants. No quiet title action was ever filed. Plaintiffs made no payments under the oral agreement after the first two. They said that defendants' excuse for not going through with the deal was that defendants said they had received a better offer of $5,000 for the property.

Defendants claim they never agreed to deliver anything but a quitclaim deed and state that plaintiffs agreed to bring the quiet title action and that defendants would pay up to $75 on the cost thereof; that they offered to return the $1,000 down payment on condition that plaintiffs would vacate the premises but that plaintiffs refused. This action followed.

An inheritance tax appraiser testified that the reasonable market value of the property on *February 13, 1947*, eight days before trial of the action, was only $2,850.

The court found generally that on July 17, 1945, plaintiffs entered into an oral agreement by which they agreed to buy and defendants agreed to sell the real property described for $3,500, $1,000 to be paid out of escrow; that defendants informed plaintiffs that they had only a quitclaim deed but that they were initiating legal proceedings through an attorney to clear up the title; that on July 18th the parties met at the bank for the purpose of opening an escrow but the escrow officer informed them that an agreement should first be drawn up by an attorney and executed by the parties; that there-

after defendants caused two agreements to be prepared by attorneys selected by them; that neither of these agreements was satisfactory to plaintiffs because not drawn according to plaintiffs' understanding of the terms of the oral agreement respecting the clearing of the title to the property; that no further written contract or agreement was prepared or tendered to the other by either party; that plaintiffs went into possession with the consent and approval of defendants on July 26, 1945; that the reasonable monthly rental value of the property is $40; that the reasonable value of the premises is $2,850, and that the price agreed to be paid to the defendants was $3,500; that plaintiffs expended $43.50 in moving and occupying the premises; that by reason of this occupancy with the consent of the defendants and the payment by the plaintiffs to the defendants of the sum of $1,000 on the purchase price and consideration, the transaction was thereby taken out of the statute of frauds; that by reason of the failure of the parties to consummate the transaction defendants are entitled to the reasonable rental value of the premises from July 26, 1945. From these findings the court concluded that specific performance of the verbal contract between the parties cannot be enforced; that the plaintiffs are entitled to recover $1,000 paid on the purchase price, plus interest from August 4, 1945, in the amount of $110.83; that plaintiffs are entitled to recover $650 damages, the difference between the price agreed to be paid by the plaintiffs to the defendants (i. e., $3,500) and the reasonable value of the premises on February 13, 1947 (i. e., $2,850), plus the sum of $43.50 incurred in going into possession thereof (totaling $693.50) ; that the defendants are entitled to recover from plaintiffs on their cross-complaint $770, the rental value of the premises at the rate of $40 per month from July 26, 1945, less the sum of $95, payments made under the oral contract, leaving a balance of $675; that the total sum of $1,804.33 awarded plaintiffs be offset by $675 awarded defendants and that plaintiffs have judgment against defendants for the difference, in the sum of $1,129.33; and that defendants are entitled to immediate restitution. Judgment was entered accordingly. Defendants appeal from that portion of the judgment in favor of plaintiffs and against defendants.

The evidence sufficiently supports the finding that plaintiffs were put into possession of the property *under the oral agreement of sale.* The sale price was definitely fixed at $3,500, with $1,000 down and payments of $35 per month

plus interest. Defendant agreed to furnish a quitclaim deed and to perfect his title to the property within a certain prescribed period. Plaintiffs expended money in moving onto the property, furnished the house, made arrangements for the purchase of water rights and privileges and had exclusive control of the property, all with the consent and knowledge of defendants. They accepted plaintiffs' $1,000 down payment and two monthly payments under the oral agreement to purchase.

It appears to us that under the evidence, there is sufficient support for the finding that there was a specific oral agreement to buy and sell real property; that there was part performance; that defendants failed and refused to perform their part of its provisions within the time prescribed; and that by reason of the circumstances related, such oral agreement was taken out of the operation of the statute of frauds.

In *Hill* v. *Den*, 121 Cal. 42 [53 P. 642], the general rule is stated to be that an oral contract for the sale of real property, or of an interest therein, is invalid under the statute of frauds; but where there has been a part performance thereof, its specific performance will be compelled by a court of equity. (See, also, *Calanchini* v. *Branstetter*, 84 Cal. 249 [24 P. 149]; *Trout* v. *Ogilvie*, 41 Cal.App. 167, 174 [182 P. 333]; *Forrester* v. *Flores*, 64 Cal. 24 [28 P. 107].)

Defendants, not being able to specifically perform according to the oral agreement, as found by the court, plaintiffs were, under the pleadings and under section 3306 of the Civil Code, entitled to the return of the principal paid. That section further provides that "in case of bad faith" plaintiff may recover, in addition thereto, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed *at the time of the breach* and the expenses properly incurred in preparing to enter upon the land. Where, through no fault of the plaintiff, specific performance cannot be decreed, the court having obtained jurisdiction of the subject matter, properly within its cognizance, may grant monetary relief which in an action at law would be by way of damages. (*Morrison* v. *Land*, 169 Cal. 580 [147 P. 259]; *Messer* v. *Hibernia Savings & Loan Society*, 149 Cal. 122 [84 P. 835].) The compensation is to be adjusted according to the rules obtaining with regard to the measure of damages for the breach of a contract in an action at law. (*Messer* v. *Hibernia Savings & Loan Society, supra*; *McCowen* v. *Pew*, 147 Cal. 299 [81 P. 958]; 23 Cal.Jur § 67, p. 511.)

■ The date of the claimed breach of the contract to convey is not disclosed by the record. If February 13, 1947, eight days before the trial, may be considered as the date of its breach, then the only evidence on the subject of value at that time was produced by plaintiffs. By that testimony it is shown that the property had a value of $2,850. This was $650 less than the amount agreed to be paid. Under these circumstances plaintiffs could not claim that they suffered any damage by the refusal of defendants to convey the property at that time. It is the *appreciation* in value between the date of the agreement and the time of its breach that determines this element of damage. (*Morgan* v. *Stearns,* 40 Cal. 434; 25 Cal.Jur. § 265, p. 815; *Kiger* v. *McCarthy Co.,* 10 Cal.App. 308 [101 P. 928]; *Nelson* v. *Fernando Nelson & Sons,* 5 Cal. 2d 511, 517 [55 P.2d 859]; *Wolfson* v. *Haddan,* 110 Cal.App. 573 [294 P. 772]; Civ. Code, § 3358.)

■ Many authorities hold that the question of "bad faith" is a factual one. (*Hamaker* v. *Bryan,* 178 Cal. 128 [172 P. 391]; 25 Cal.Jur. § 265, p. 817.) ■ It has likewise been held that a vendor is chargeable with bad faith, within the meaning of section 3306 of the Civil Code where, without just cause or excuse, he refuses to perform the contract, or where, through his own negligence, he has put it out of his power to perform. But this is not true of one who contracts to convey but is unable to do so, notwithstanding his best efforts. (*Johnson* v. *Schimpf,* 197 Cal. 43 [239 P. 401]; *Clark* v. *Yocum,* 116 Cal. 515 [48 P. 498]; *Shaw* v. *Union Escrow etc. Co.,* 53 Cal.App. 66 [200 P. 25].)

■ While there is evidence in the instant case that defendant refused to deliver title because he could then receive $5,000 for the property, there was no finding of "bad faith" by the trial court and we may not assume it on this appeal. Therefore, the judgment awarding plaintiffs damage is not supported by the findings or by the evidence. Whether the trial court properly awarded defendants judgment against the plaintiffs on their cross-complaint for claimed rental value of the premises is not questioned on this appeal. (See *Cornblith* v. *Valentine,* 211 Cal. 243 [294 P. 1065].)

The portion of the judgment relating to damages is reversed and the cause remanded for a new trial on that issue, including the question of bad faith, and for the purpose of entering judgment not inconsistent with the conclusions here reached.

Barnard, P. J., and Mussell, J., concurred.