[Civ. No. 32659.   Second Dist., Div. One.   Jan. 31, 1969.]

MILTON G. BRANDOLINO et al., Plaintiffs and Respondents, v. NEWTON E. LINDSAY, Defendant and Appellant.

Edward L. Lacy for Defendant and Appellant.

Gabler, High, Clark & Berglund and Jess F. High for Plaintiffs and Respondents.

WOOD, P. J.—This is an action for specific performance or, in the alternative, for damages for the breach of an agreement whereby defendant Newton E. Lindsay, who owned an undivided one-half interest in forty acres of land, agreed to sell the forty acres to plaintiffs for $50,000. The court denied specific performance and awarded $25,000 damages to plaintiffs against defendant Lindsay for his breach of the agreement.[1] He appeals from the judgment.

---

[1]Defendants Roger M. Kelley and Gladys B. Kelley owned an interest in the land. The judgment in favor of plaintiffs was against defendant Lindsay only.

Appellant contends that the court erred in awarding damages to plaintiffs ''in equity,'' and erred in applying the doctrine of election of remedies.

Prior to May 18, 1964, Dr. Brandolino (one of plaintiffs) had discussions with defendant Lindsay and Mr. Ghiglia, a broker, regarding the purchase of 40 acres of land near Castaic. They discussed a lease with an option to purchase the property for $46 000. Lindsay said that he wanted $50,000, and Ghiglia went to a bank and obtained escrow instructions for the purchase and sale of the property for $50,000.

On May 18, 1964, Ghiglia took the instructions, which were dated May 18, 1964, to Lindsay, and Lindsay told Ghiglia to take the instructions to his (Lindsay's) attorney for approval. The attorney approved the instructions and indicated his approval in writing. Lindsay then signed the instructions as seller, and Dr. Brandolino and Mr. High (plaintiffs) signed the instructions as buyers.

On May 21, 1964, Lindsay notified the bank (escrow holder) to cancel the escrow. Ghiglia asked him why he wanted to cancel the escrow, and he said that he could ''get twice as much.'' The bank advised the plaintiffs of Lindsay's notification to cancel the escrow, and they refused to cancel the escrow. Thereafter, the plaintiffs on several occasions requested that Lindsay ''go through with'' the escrow, but Lindsay refused the request.

Plaintiffs then filed this action and recorded a Notice of Lis Pendens which described the land.

The first cause of action of the first amended complaint (verified) is for specific performance of the agreement (escrow instructions) and includes allegations that the agreed sales price of the property was $50,000, and that plaintiffs are informed and believe and therefore allege that $50,000 was the fair and reasonable value of the property.

The second cause of action of that complaint is for damages for breach of the agreement, and it alleges, among other things, that by reason of the breach plaintiffs were damaged in the amount of $25,000, which is the difference between the agreed price, $50,000, of the property, and the value, $75,000, as of the date of the breach. The prayer is for specific performance of the agreement or, in the alternative, for $25,000.

The trial proceeded on plaintiffs' first amended complaint and the answers thereto. Several witnesses called by the plaintiffs testified as to the value of the property on May 21, 1964 (date when Lindsay repudiated agreement by cancelling escrow instructions). Mr. Snorgras, an appraiser, testified

that the value was $76,000. Mr. Ghiglia, a real estate broker; testified that the value was $80,000 to $100,000. Mr. Lindsay (called as a witness under Evid. Code, § 776) and Dr. Brandolino testified that the value was $100,000. Plaintiff High testified that the value was $80,000 to $90,000. The judge stated that since plaintiffs' own witnesses testified that the value of the land exceeded the purchase price ($50,000); the purchase price was not the fair and reasonable value of the property, and that specific performance would be denied. Plaintiffs' counsel said that plaintiffs would abandon the cause of action for specific performance.

Defendant Lindsay testified in substance that he and Ghiglia (broker) discussed the possibility of leasing the property for six months with an option to sell it; later he and Ghiglia discussed such a lease and option with Brandolino; he told them that he would not sell the property for less than $46,000; he indicated, on papers for a proposed lease and option to sell for $46,000 (which papers were not signed), that he would sell the property for $50,000; on May 18, 1964, Ghiglia brought escrow instructions to him, regarding a sale of the property for $50,000; he told Ghiglia to take the instructions to his (Lindsay's) attorney for approval; the attorney approved the instructions (a notation thereon, signed by the attorney and dated May 18, 1964, was: "Bud, I have read these and it looks okay."); thereafter, he (Lindsay) signed the instructions; a few days later he notified the bank to cancel the instructions; and at that time he told Ghiglia that the property was worth twice as much as $50,000.

Some of the findings were in substance as follows: On May 18, 1964, defendant Lindsay and plaintiffs entered into an agreement to sell the property to plaintiffs for $50,000. Lindsay repudiated the agreement and refused to consummate the sale. Plaintiffs performed all obligations to be performed by them up to the time of the repudiation. Fifty thousand dollars was not a just and reasonable price for the property and was not fair and adequate consideration therefor. Lindsay was the owner of an undivided one-half interest in the property. Lindsay sought and received the advice of his attorney before signing the instructions, and he signed the instructions of his own free will after due deliberation; and he did not have just cause or excuse to refuse to perform the agreement, and he acted in bad faith in refusing to convey the property to plaintiffs. The fair market value of the property on the date of the agreement was $75,000. Plaintiff's have been dam-

aged in the sum of $25,000 by defendant Lindsay's refusal to perform the agreement.

A conclusion of law was that although Lindsay owned only one-half interest in the property, he agreed to convey the fee title to the property to plaintiffs.

Appellant contends that the court erred in awarding damages "in equity." He argues that although plaintiffs' complaint included a cause of action for specific performance and a cause of action for damages, the recordation by plaintiffs of the notice of lis pendens limited plaintiffs to their cause of action for specific performance and precluded their recovery of damages; and that since plaintiffs' evidence showed that the value of the land greatly exceeded the fair and reasonable value· thereof as alleged in plaintiffs' verified (amended) complaint, "To permit them to falsify their own allegations to seek damages, under such circumstances, makes a mockery of equity," and that "The greater the discrepancy in the sworn allegation as to value, the greater would be their reward of damages." He asserts further that charging him with bad faith and loading him with heavy damages for refusing to perform the unfair agreement while he was prevented by the lis pendens notice from salvaging anything from the property rendered meaningless the equitable rule against enforcing performance of an unjust agreement. ·

█ A complaint may allege inconsistent theories of a cause of action in the alternative (2 Witkin, Cal. Procedure (1954) Pleading, § 181, p. 1160), including theories seeking specific performance of an agreement, or in the alternative, damages for the breach thereof (See *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158, 173 [88 P.2d 698, 89 P.2d 386]; *Baran* v. *Goldberg*, 86 Cal.App.2d 506, 511 [194 P.2d 765]; and, the court may award damages if plaintiffs are not entitled to specific performance. (See *Pascoe* v. *Morrison*, 219 Cal. 54, 57-58 [25 P.2d 9]; *Engasser* v. *Jones*, 88 Cal.App. 2d 171, 176 [198 P.2d 546]; *Baran* v. *Goldberg, supra,* pp. 510-511; 2 Witkin, Cal. Procedure, *supra,* § 387, p. 1363.) █ If specific performance of an agreement to convey real property cannot be decreed, and damages are awarded, then the measure of damages is the return of the principal paid and, in case of bad faith, the difference between the price agreed to be paid and the value of the property at the time of the breach. (Civ. Code, § 3306; *Engasser* v. *Jones, supra,* p. 176; *Baran* v. *Goldberg, supra,* p. 511.)

█ In the present case, the first amended complaint

alleged a cause of action for specific performance of the agreement and a cause of action for damages for the breach thereof; and the prayer was for specific performance or, in the alternative, $25,000 damages for the breach of the contract. The first alleged cause of action included allegations, made upon information and belief, that $50,000 was the fair and reasonable value of the property; and the second cause of action (for damages for breach) alleged that the value of the property at the time of the breach was $75,000. There was evidence that the value at the time of the breach exceeded $75,000, and the court found that defendant acted in bad faith in repudiating the agreement and that plaintiffs were damaged in the amount of $25,000 (prayer of first amended complaint was for $25,000). The evidence supported the finding of bad faith.[2]　■　''The term bad faith, as used in the statute [Civ. Code, § 3306] does not require a showing of fraud, but only of a deliberate refusal to perform without just cause or excuse.'' (*Rasmussen* v. *Moe,* 138 Cal.App.2d 499, 503 [292 P.2d 226]); and the question of bad faith was a question of fact. (See *Engasser* v. *Jones, supra,* p. 177.)

■　Appellant asserts, however, that plaintiffs, by recording the notice of lis pendens, were thereby limited to specific performance and were precluded from recovering damages; that by reason of the recordation of the lis pendens notice it cannot be concluded that plaintiffs intended the action to be ''both'' for specific performance and for damages; and that if it were so concluded, then plaintiffs came into equity with unclean hands. As previously stated, plaintiffs properly could seek specific performance or, in the alternative, damages. Section 409 of the Code of Civil Procedure authorizes the recordation of a lis pendens notice in an action affecting the title or the right of possession of real property, and provides that the recordation is constructive notice to purchasers.　■　''The purpose of a lis pendens is merely to furnish a means of notifying all persons of the pendency of an action and thereby to bind any person who may acquire an interest in property, subsequent to the institution of the action, by any judgment which may be secured in the action affecting the property.'' (*Patten-Blinn Lbr. Co.* v. *Francis,* 166 Cal.App. 2d 196, 199-200 [333 P.2d 255], quoting from *Lee* v. *Silva,* 197 Cal. 364, 373 [240 P. 1015]; see *Albertson* v. *Raboff,* 46 Cal.2d 375, 379 [295 P.2d 405].)　■　There is no merit to appel-

---

[2] In *Engasser* v. *Jones, supra,* and in *Baran* v. *Goldberg, supra,* there was no finding of bad faith.

lant's assertion that the recording of the lis pendens notice operated to preclude plaintiffs from recovering damages in the event specific performance could not be decreed. ■ The court did not err in awarding damages to plaintiffs.

■ Appellant further contends that the court erred in applying the doctrine of election of remedies. He argues that plaintiffs were permitted to switch to the law side of the court only after they knew they had failed to win their case in equity.

■ In *Tanforan* v. *Tanforan*, 173 Cal. 270, 274 [159 P. 709], it was said: "Since, then, inconsistent causes of action may be pleaded, it is not proper for the judge to force upon the plaintiff an election between those causes which he has a right to plead. Plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election, or in other words the decision as to which of them is sustained, is, after the taking of all the evidence, a matter for the judge or the jury." (See 2 Witkin, Cal. Procedure, *supra,* § 183, p. 1162; 39 Cal.Jur.2d, Pleading, § 87, pp. 128-130.)

■ In the present case, after the plaintiffs had called several witnesses who testified that the value of the land exceeded $75,000, the court stated that, in view of such testimony, the consideration ($50,000) for the purchase of the property was inadequate and specific performance would be denied. Counsel for plaintiffs then stated that they would abandon their cause of action for specific performance. The trial proceeded, and the court awarded plaintiffs damages for breach of the agreement. As above indicated, the plaintiffs could seek specific performance or, in the alternative, damages; and, in the event specific performance could not have been decreed, the court could award damages. Furthermore, the record does not show that defendant raised the question regarding election of remedies, by motion, or otherwise, in the trial court prior to the time plaintiffs' counsel stated that plaintiffs would abandon the cause of action for specific performance. (See *Klinger* v. *Modesto Fruit Co.,* 107 Cal.App. 97, 104 [290 P. 127]; 39 Cal.Jur.2d, Pleading, § 304, pp. 416-417.) There was no error with respect to the matter of election of remedies.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied February 26, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1969.