MR. JUSTICE SHEEHY
dissenting:
I concur in part and dissent in part from the foregoing opinion.
The statute under which the District Court granted the judgment in the sum of $9,600 to the Stovalls was section 17-306, R.C.M. 1947, now section 27-1-314, MCA, which provides:
“The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land.” (Emphasis added.)
*449 The District Court confined itself to that statute in determining damages. When one examines the language of section 27-1-314, MCA, above, one sees that damages thereunder can take two forms and two determinations: (1) a return of monies paid and expenses incurred in document preparation; and, (2) if bad faith is present the difference between the price agreed upon and the value of the estate agreed to be conveyed at the time of the breach.
Under the first portion of section 27-1-314, MCA, the District Court found that no damages had been proved, since no purchase price had been paid and there was no evidence relating to document preparation or other expenses. In connection with the second determination, the District Court found bad faith on the part of Lillian Watt, and on that basis awarded the damages stated above.
The District Court found that the conduct of Lillian Watt in refusing to recognize the option agreement as having any validity was bad faith “admittedly because of the guidance of [her attorney].” The District Court further found that Lillian Watt was not guilty of fraud or misrepresentation, and it did not find that she had unclean hands as against the Stovalls. The controlling element as far as the District Court is concerned is that Lillian Watt, through the advice of her counsel, took the position that the Stovall lease was not a binding lease because the condition precedent, “possession thereof to be given as soon as present tenant vacates same . . never occurred. The District Court found that Lillian Watt’s position that the lease was not binding until the possession transferred was not asserted at the time the Stovalls were pressing Mason and Lillian Watt for information on the bids so they could exercise the option, and that “it was not until after the sale to the Hardys had been agreed upon and Hardys attorney made a release of the Stovall lease a title requirement, that Mason put forth the theory that the Stovall lease was conditioned upon Hardy vacating.”
This determination by the District Court however, does not square with the written evidence of the case. In the time when attorney Mason was soliciting bids from the Hardys and the Stovalls, *450 between January 1970 and March 27, 1970, the latter date being when the Stovalls indicated they would meet the $20,000 bid, attorney Mason solicited the bids from both parties to avoid “cutthroat action”. It also appears that when the facts of the dual leases became known to all the parties, that the attorney wrote both to Hardy and Stovall suggesting that they share the lease, one to take the lease for farm purposes, and the other to have the grazing privileges after the farming was completed in the fall. Indeed, on April 5, 1969, nearly a year before the sale to Hardys was consummated, Lillian Watt had written to her attorney “the lease to the Stovalls was contingent upon the Hardys moving off the place, and no money has changed hands ...” I think the evidence is clear that the contention that Stovall had a conditional lease was not an afterthought on the part of Lillian Watt, but her view of the legal status of the Stovall lease all along. While such legal position may have been mistaken, when we consider her actions from the aspect of bad faith, she cannot be characterized as a miscreant.
This brings us to a consideration of what constitutes “bad faith” in connection with an award of damages under section 27-1-314, MCA. It is a term that cannot be defined with scientific precision. It has been held that “good faith” is that ordinarily exhibited by a seller who is unable to perform through no fault of his own; while “bad faith” is that shown by a seller who refuses to perform though able to do so. Charles County Broadcasting Co., Inc. v. Meares (1973), 270 Md. 321, 311 A.2d 27, 31. As applied to an insurer under an insurance policy it is said that “bad faith” embraces more than negligence and imports dishonest purpose or conscious wrongdoing. Simpson v. Motorists Mutual Insurance Company (7th Cir. 1974), 494 F.2d 850, 853. Although in Rasmussen v. Moe (1956), 138 Cal.2d 499, 292 P.2d 226, 229, it was held that the negligence of a vendor which put him in a position of being unable to perform his contract was sufficient to show bad faith, it has also been held in California that in general bad faith extends beyond fraud or dishonesty and embraces unfair dealings; it often denotes a deliberate refusal to perform without just or reasonable cause. *451 County of Inyo v. City of Los Angeles (1978), 144 Cal.Rptr. 71, 77, 78 Cal.App.3d 82. A refusal to perform without just cause or excuse is sufficient to constitute bad faith according to Brandolino v. Lindsay (1969), 75 Cal.Rptr. 56, 60, 269 Cal.App.2d 319.
I would hold that before bad faith may be found as to a vendor who refuses to perform an agreement to convey real estate, such bad faith must be based upon some motive of self-interest or ill will toward the other party. Those elements are lacking entirely here. The refusal to perform has not benefited Lillian Watt. In fact, the evidence indicates that the property which she agreed to sell had a value at the time of the trial of $ 157,000. While that is not a factor to be considered, since section 27-1-314, MCA requires the value to be determined as of the time of the breach, it does indicate that she was not motivated by self profit or self-interest in refusing to convey the property to Stovalls. Nor can it be said from the evidence that her decision was based upon ill will toward Stovall. She made her decision apparently because she recognized that the Hardys had farmed her properties since the 1950’s and had acted in good faith in making their lease payments and procuring a new lease from the agent of her predecessor in ownership. Of course, she had received no monies of any kind under the Stovall lease. Therefore since her actions do not constitute bad faith in the premises, the award of damages against her on that ground should be reversed.
Nothing I say here should be taken to mean that in a proper case a prospective vendee or option holder is precluded from recovering damages not only under section 27-1-314, MCA, but also under section 27-1-311, MCA. Section 27-1-311 is the general statute on the measure of damages for breach of contract, and incorporates the ancient principle of Hadley v. Baxendale (1854), 9 Exch. 341, 156 Eng. Reprint 145; Laas v. Mont. Hwy. Comm’n et al. (1971), 157 Mont. 121, 131, 483 P.2d 699.
The general rule is that the measure of damages in a contract breach is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things will be likely to result therefrom. Section *452 27-1-314, MCA, is not necessarily exclusive. Wiseman v. Holt (1973), 163 Mont. 387, 517 P.2d 711. But this case was tried under the theory that extra damages were recoverable on the ground of bad faith and on that ground I would determine that the award of damages against Lillian Watt must fall.
Accordingly, I concur in the majority opinion that specific performance is not applicable here but I dissent to the affirmance of the judgment against Lillian Watt in favor of the Stovalls.