[Civ. No. 3789. Fourth Dist. Feb. 27, 1950.]

STEVE FETTERLY, Respondent, v. E. C. SALYER et al., Appellants.

Sidney J. W. Sharp, Herbert M. Braden and Lawrence W. Clawson for Appellants.

Walch & Griswold for Respondent.

BARNARD, P. J.—The defendants had under lease a part of the old Tulare Lake bed, described by quarter sections, and the plaintiff had under lease two parcels, similarly described, which adjoined the defendants' land. In the fall of 1946, the parties sowed barley on their respective lands. At that time the exact location of the section lines was unknown to either party, and each planted what he thought was the land leased by him. The defendants planted their land first, seeding barley up to an old levee and ditch line. The plaintiff later sowed barley on his land, seeding up to the same line where the defendants had stopped. There is evidence that for some 25 years this levee and ditch line had been accepted by previous owners and farmers of these parcels as the boundaries and lines to which they had planted crops. There is evidence, however, that the land in question had been under water for nearly 10 years prior to the season in question.

The barley planted by the plaintiff was ready for harvest by June, 1947. Shortly before harvest time the defendants had their land surveyed by two engineers, who set stakes purportedly marking the quarter section lines. Although the plaintiff was not informed of this survey he observed, a few days before harvest and seven months after the barley had

been planted, some stakes in his field of barley. He proceeded, according to custom, to cut a strip of barley around each of his parcels to make room for the big harvesters to come in and complete the harvest. The strip thus cut included an area of several acres along the boundary line, which is the area in dispute, and which the defendants claim to be theirs, as shown by their private survey. Thereupon, the defendants went upon the plaintiff's land and harvested and removed the grain from a similar area.

The plaintiff brought this action alleging that the defendants had unlawfully entered upon his land and had harvested, removed and converted to their own use 48.44 tons of barley of the reasonable value of $2,905.80, to his damage in that amount. It was also alleged that in doing these things the defendants had acted maliciously and oppressively, and by reason thereof $3,000 was demanded as exemplary and punitive damages. In their answer the defendants admitted that they had gone upon the plaintiff's property and harvested and taken the barley from about 12½ acres, alleging that they had done so because the plaintiff had previously trespassed upon their property and harvested a similar area of barley. They also filed a cross-complaint alleging that the plaintiff had trespassed upon their land and had harvested and taken therefrom 48.44 tons of barley of the reasonable value of $4,-601.80. They also sought exemplary and punitive damages against the plaintiff in the sum of $3,000.

A jury brought in a verdict in favor of the plaintiff and cross-defendant and against the defendants and cross-complainants, and awarded the plaintiff $2,479.68 as actual damages and $1,500 as exemplary or punitive damages. Judgment for these amounts was entered in favor of the plaintiff and the defendants have appealed.

The appellants first contend that the damages awarded were excessive and were based upon passion or prejudice. The admission of certain evidence is assigned as "inflammatory and prejudicial." In the evidence thus attacked the plaintiff was allowed to testify that when he observed that some of his grain was being harvested by the defendants he went to see his attorney and also the district attorney. Another witness was allowed to testify that the defendants, or some of them, were farming about 12,000 acres of land that year. Conceding that these matters were immaterial, it does not seem reasonable that they could have affected the verdict, and they do not appear sufficiently prejudicial to justify a reversal.

■ With respect to the actual damages awarded it is contended that the value of the barley taken from respondent's land by the appellants was $1,779 and not $2,479.68, as found by the jury. There is no dispute as to the market price of the grain. While the evidence for the appellants was to the effect that a smaller amount of barley was taken by them, there was other evidence, which was accepted by the jury, supporting the implied finding that the larger amount represented by this award was taken. ■ The appellants also argue in this connection that the amount of the actual damages allowed should have been reduced since they are entitled to a credit for one-third of the crop harvested from their land by the respondent, this being the usual rent for such land. The appellants admitted that they took the barley from the respondent's land, and although there was evidence that the usual rental was one-third of the crop they were not entitled to any rental for the respondent's land. Nor does it appear that they were entitled, as an offset, to the rental value of that part of their land which they claim had been used by the respondent. This matter had not been pleaded, the case was tried upon another theory, and it does not certainly appear that the respondent had occupied any of the appellants' land. The actual boundaries were not known, the respondent had been allowed, without objection, to occupy the land in question during the growing season, and the evidence is sufficient to support the implied finding of the jury, upon the disputed question of fact, that the respondent occupied, and harvested grain on, only the land which he had leased.

■ It is next contended that the court erred in failing to give several instructions. With one exception, these were upon the theory and were to the effect that if each of the parties was equally guilty of a trespass and conversion the one should be set off against the other, and neither could recover. These instructions were properly refused. The appellants were not justified in taking the law into their own hands and entering the respondent's premises for the purpose of taking an amount of grain equal to that which they claim he had taken from them. Even if the respondent had first entered the appellants' land and taken grain therefrom, and the implied finding of the jury was to the contrary, the appellants had a legal remedy but preferred to adopt arbitrary methods of their own. The ancient law that ''he shall take who has the power, and he shall keep who can'' is no longer in effect. The other re-

fused instruction related to the matter of exemplary damages but was far from complete.

Finally, it is contended that there is no evidence justifying the award of $1,500 for punitive damages. This contention must be sustained. Exemplary damages are allowed only where the defendant has been guilty of oppression, fraud or malice. (Civ. Code, § 3294.) While there is some evidence of ill-feeling here, as pointed out by the respondent, that evidence relates to a later period and there is no such evidence with respect to the time when this controversy arose or theretofore. The boundary lines were not known and the defendants not only hired surveyors but consulted an attorney before taking the action in question. While they took the wrong course and were liable for their acts, they were liable only for the actual damage done. It clearly appears that they were acting under a mistaken claim of right and there is no evidence to show oppression, fraud or malice. (*Wolfsen* v. *Hathaway*, 32 Cal.2d 632 [198 P.2d 1]; *Maher* v. *Wilson*, 139 Cal. 514 [73 P. 418].)

The judgment is modified by reducing it in the sum of $1,500, being the amount awarded as exemplary damages and, as so modified, the judgment is affirmed. The parties to bear their own costs on appeal.

Griffin, J., and Mussell, J., concurred.