[Civ. No. 18751. Second Dist., Div. One. Apr. 21, 1952.]

JOHN W. PIXLEY et al., Respondents, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SANTA MONICA (a Corporation), Appellant.

Samuel J. Crawford, Robert D. Ogle and Joseph T. Enright for Appellant.

Scudder & Forde and Morris W. Young for Respondents.

HANSON, J. pro tem.—This is a suit for damages for breach of a contract to convey a residential property.

The defendant savings and loan association, the appellant, contended in the lower court, as it likewise contends here, (1) that its escrow instructions—which together with the instructions signed by plaintiffs comprised the written contract between the parties—were not binding upon it as they were signed in its behalf only by its secretary and not by its secretary and its vice president; (2) that there was a mutual mistake of law and fact which voided the contract; and (3) that the trial court erred in finding the defendant was guilty of bad faith in refusing to convey and in its allowance of damages based on that theory.

The defendant in 1946 made a construction loan to one Grosbach in the sum of $8,000 and as security took back a trust deed on the property here involved. The defendant did not inspect the property prior to recording the deed to ascertain whether any building material had been deposited, or work done, upon the premises which might give mechanics' liens subsequently filed a priority over the lien of the trust deed. Evidently this failure was due to the inadvertence of some one or more employees of the defendant charged with such duty. More than a year later four mechanics' liens were filed against the property; one, in August, 1947, and three in January, 1948, but at the trial no evidence was offered to show that any of these mechanics' liens were entitled to priority over defendant's trust deed and for want of such evidence the court found they had no priority.

In October, 1948, the defendant caused notice of default under the terms of its trust deed to be filed, but the trustee's

sale was not had until July 19, 1949, at which time the defendant bid in the property for the sum of $8,378.55.

Prior to the trust deed sale the plaintiffs had several conferences with one Kibbe, vice president of the defendant, in which they sought to purchase the property. At a conference had on July 11, 1949, the parties orally agreed, subject to the approval of the defendant's board of directors, that plaintiffs should not bid at the trustee's sale, but that the defendant should purchase the property upon said sale, and resell it to plaintiffs at a price totaling the balance due on defendant's trust deed, plus interest, foreclosure expenses, buyers' and seller's escrow expenses, title policy costs, and a $500 profit to defendant, and thereupon it would deliver a good title evidenced by a policy of title insurance. In these conferences there never was any discussion concerning mechanics' liens.

On July 22d Kibbe having received the trustee's deed along with its bill for fees and expenditures prepared a memorandum listing the sum of $9,244.05 as being the amount payable by the plaintiffs. The items aggregating this sum were the bid price of $8,378.55; interest thereon $12.12; policy of title insurance $45; internal revenue stamps and recording $12.45; taxes $295.93; agreed profit for defendant $500. He next procured from the board of directors a resolution which recited it was ''Resolved, that the officers are hereby directed to sell'' the lot involved ''for $9,244.05. Vance C. Kibbe, Vice President and Carl D. Gibbons, Secretary, are authorized to execute the necessary papers to complete this sale.'' Thereupon, Kibbe and Gibbons executed the corporation's grant deed of the property to the plaintiffs as grantees, ''subject to general and special taxes for 1949-50; covenants, conditions, restrictions, reservations, easements, rights and rights of way of record.'' Kibbe thereupon telephoned the plaintiffs that he had procured the necessary resolution from the board of directors to sell the property for $9,244.05 and requested that they come to defendant's office on July 25th with that sum prepared to enter into an escrow. Kibbe further stated that defendant's escrow officer would prepare the escrow instructions and handle the transaction as he would have to be out of town. All this was orally agreed to by the plaintiffs. Before leaving for out of town Kibbe handed the grant deed and his price computation memorandum to the escrow officer. On July 25th the escrow officer prepared both the seller's and the buyers' escrow instructions. She then caused the plain-

tiffs to sign the buyers' instructions and secretary Gibbons to sign the seller's instructions in behalf of the corporation. Likewise she accepted the sum of $9,244.05 from the plaintiffs and placed that sum along with the defendant's deed into escrow. At that time she stated to plaintiffs that Mr. Kibbe would sign on the line she had provided for his signature as soon as he returned. This signature was never placed on the instructions. Immediately thereafter the escrow officer forwarded the defendant's deed to the Title Insurance and Trust Company along with an order requesting it to issue a title policy in favor of plaintiffs but instructing it to hold the deed for further orders. Upon receiving the usual preliminary title report the escrow officer advised the plaintiffs she was deferring action until Mr. Kibbe's return as the report showed mechanics' liens of record. On his return Kibbe advised the plaintiffs he would have defendant's attorney clear the record. However, about a month later, Kibbe upon learning that the title company would not insure the title clear of the mechanics' liens, evidently had a change of heart and so wrote plaintiffs a letter wherein he conceded the property had been sold to the plaintiffs, but by it he sought to vary the terms of the escrow by asserting that the final amount payable was not ''$9,244.05 as provided for in the escrow instructions,'' but such additional amount as the defendant might be obligated to pay to clear the title. This contention, as set forth in the letter, was based on the alleged terms of the prior oral agreement. The plaintiffs having refused to agree to this variation the defendant conveyed the property to a third person returning to the plaintiffs their deposit of $9,244.05 which was given and accepted without prejudice to the plaintiffs' rights.

The initial contention urged upon us is that there was no binding written contract for want of the signature of Kibbe, in his capacity as vice president of the defendant. One difficulty with the contention is that it is not shown that such a signature was requisite, unless it may be implied that the resolution of the board of directors required such a signature to make the seller's escrow instructions effective. The mere fact that the escrow officer provided signature lines for two officers to sign rather than one could not affect the authority the secretary had to bind the corporation. But assuming for the sake of argument, that the defendant was not bound by the seller's instructions signed by the secretary in its behalf and in its name, for want of the signature of its vice

president Kibbe, it nevertheless appears that both Kibbe and Gibbons signed the grant deed in behalf of the defendant in strict accord with the resolution and that Kibbe gave the deed to the escrow officer to be placed in the escrow when opened. Moreover, Kibbe's letter to the plaintiffs which conceded that the property had been sold through escrow was a sufficient ratification of the escrow instructions which were not signed by him. (*Schader* v. *White*, 173 Cal. 441, 445 [160 P. 557]; *Wood* v. *Davis*, 82 Ill. 311.)

Second. Appellant contends that the appellant and the respondents assumed at all times that the foreclosure of the trust deed would extinguish all the mechanics' liens recorded against the property and hence, because of this mistake of fact or of law the contract was voidable at the instance of the appellant. Assuming for the sake of argument that appellant and the respondents both assumed that the lien of appellant's trust deed was a first lien prior to the subsequent mechanics' liens which were filed, that fact was legally immaterial. In the first place the respondents were entitled to assume that the trust deed having been filed prior to the mechanics' liens was a prior lien as it appeared of record to be. If that was true the respondents were entitled to receive a title policy insuring such a title in their favor along with a conveyance both measured accordingly. The obligation to convey such a title, properly insured, rested upon the appellant despite the expense it might be put to in procuring it. In short, if the appellant under *such circumstances* failed to procure a policy of that character the fault would rest wholly with it. A further difficulty with appellant's position is that it assumed—rightly or wrongly—that the mechanics' liens in whole or in part were prior to its own lien and on that assumption declined to proceed to establish the fact that its lien was the prior lien and procure a title policy insuring the title accordingly. The truth of the matter is that appellant, in the trial below, wholly failed to show that any of the mechanics' liens were superior to its own trust deed lien and on that basis the trial court rightly found the liens were not superior. Accordingly, the first trust deed on the evidence was the superior lien as assumed by the appellant and the respondents. That being true there was no mistake of fact or of law on the part of any of the parties to the lawsuit.

Third. The final contention of appellant is that the court erred in finding that it was guilty of "bad faith" and

as a consequence allowing statutory damages equal to the "difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach . . ." as provided in Civil Code, section 3306, where bad faith is shown. ■ The phrase "bad faith" as used in the statute mentioned does not under our cases require a showing of fraud as appellant contends. ■ The contract of sale in this case did not fail for want of title or as a consequence of a defect in the title of appellant. For aught that appears appellant held a perfect title of record, subject only to assessments and taxes, presumptively not assailable by the mechanics' liens of record owing to the foreclosure of appellant's first trust deed.

If, as appellant contends, the parties dealt with one another on the assumption that the trust deed was the superior lien of record and its foreclosure would vest a title in appellant not subject to other liens of record, the assumption was not shown to be incorrect. The title company declined to insure the title not on the theory that subsequent liens of record were prior, but that through extrinsic evidence they might be shown to be entitled to priority. Accordingly, it was incumbent upon appellant to satisfy the title company as to the true fact based upon acceptable affidavits, releases or by a decree quieting the title. By its contract appellant had not only agreed to convey the premises free of all liens except current taxes, but it had also agreed to procure a title policy of like tenor. Unless and until it did so it was in default and if it ultimately failed, it breached its contract. There is nothing in the record to indicate that the appellant could not have fulfilled its obligation had it chosen to do so. In short, it is plain that the title company would have insured appellant's title if appellant had taken the necessary steps to safeguard the company. Accordingly, upon the facts appellant was guilty of "bad faith" within the meaning of that phrase as it is used in Civil Code, section 3306. ■ Bad faith is shown where there is a "deliberate refusal to perform" (*Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511, 518 [55 P.2d 859]) or a refusal to convey, "where through his own negligence he has put it out of his power to fulfill the obligations of his contract" (*Johnson* v. *Schimpf,* 197 Cal. 43, 48 [239 P. 401]) or "without just cause or excuse, he refuses to perform" (*Engasser* v. *Jones,* 88 Cal.App.2d 171, 177 [198 P.2d 546]).

For the reasons stated the judgment should be and it is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 12, 1952, and appellant's petition for a hearing by the Supreme Court was denied June 19, 1952.