[Civ. No. 16135. First Dist., Div. One. Feb. 3, 1955.]

SOPHIE JOHNSON, Appellant, v. J. E. GOLDBERG, Respondent.

ALFRED H. CASSIDY et al., Appellants, v. J. E. GOLDBERG, Respondent.

Henry C. Clausen for Appellants.

Charles McLaughlin, Newell J. Hooey and Herbert Chamberlin for Respondent.

BRAY, J.—Plaintiff Johnson sued defendant for damages for breach of contract to sell certain real and personal property.* Plaintiffs Cassidy, Gromeeko and O'Keefe in a separate suit sued defendant for real estate brokers' commission claimed to arise from the same contract.† Both actions were consolidated for trial. The trial court directed verdicts in favor of defendant in both actions. From the judgments entered thereon all plaintiffs appeal.

## QUESTIONS PRESENTED

First case: Did the evidence show as a matter of law that all of the conditions precedent of the contract were not performed by plaintiff Johnson? This, in turn, depends upon the interpretation of the clause "Form of Deed of Trust subject to the approval of Seller and Purchaser."

Second case: Were plaintiff real estate brokers entitled to a commission upon the signing of the contract by plaintiff Johnson and defendant?

* Hereafter referred to as the "first action."
† Hereafter referred to as the "second action."

## FACTS

Applying the rule applicable to reviews of directed verdicts, that the evidence must be considered most favorably to plaintiffs and that conflicting or unfavorable evidence or inferences will be disregarded (*Hughes* v. *Oreb*, 36 Cal.2d 854, 857 [228 P.2d 550]), the facts follow:

Plaintiffs Cassidy, O'Keefe and Gromeeko, real estate brokers, separately endeavored unsuccessfully to consummate a sale of defendant's real property to plaintiff Johnson. Later defendant suggested to Gromeeko that he again try to get Johnson to purchase. Gromeeko saw Johnson, who was willing to purchase for $165,000, defendant's asking price. Gromeeko then prepared a "Uniform Agreement of Sale and Deposit Receipt," reciting a purchase price of $165,000 for the described real and personal property, payable $40,000 cash and balance on certain terms evidenced by a note secured by deed of trust. Among other provisions purchaser was given 10 days to examine title. If no objections to title were made, purchaser must pay the $40,000 and deliver note and deed of trust in escrow to the named title company and seller must deposit deed to buyer within said 10 days. Time was made of the essence of the agreement. November 28, 1950, Johnson, defendant and Gromeeko met at the title company. Defendant agreed with the terms of the agreement drawn by Gromeeko but stated that she wanted the deed of trust to be on a form to be provided by her and which she would later bring to the title company. Because of her desire, the title company officer present added to the agreement "Form of Deed of Trust subject to the approval of Seller and Purchaser." The parties initialed this change and signed the agreement, and Johnson deposited $5,000 mentioned in the agreement as a deposit. Defendant stated she would close the deal as of December 1st and would deposit all papers by that time. Between the 5th and 7th of December she deposited an insurance company form of deed of trust and note which was signed by Johnson December 8th. Shortly after the execution of the deed of trust Gromeeko told Johnson that defendant wanted her to permit defendant's attorney to inspect her citizenship papers. This was done at the title company. Two additional documents deposited by defendant were submitted to plaintiff for signature. One was a property management agreement drawn up by defendant herself and required by her because she feared that in case of

war with Russia Johnson might be interned. This provided that in case of Johnson's default in any of the monthly payments, a certain real estate concern could take over the operation and management of the property (it is an apartment house) and collect the rents, etc. The second document was a proposed contract regarding payment to defendant of back rent due from a certain tenant. This was the first time Johnson had heard of these documents, and, after consulting with her attorney, she refused to sign them. She authorized her attorney to negotiate with defendant's attorney for a more suitable property management agreement. The attorneys got together and drew up an additional clause to be added to the agreement proposed by defendant concerning curing of default. Defendant refused to accept this change and reprimanded her attorney for letting Johnson's attorney see her proposed property management agreement. About December 5th, Gromeeko told defendant the deal was "completely ready and finished," ready for the deposit of her deed. She refused to do so unless Johnson signed the management agreement. December 8th, Johnson in writing notified the title company that the management agreement was not required by the purchase and sale contract; that Johnson had executed the deed of trust and demanded that the sale be consummated. Because of defendant's refusal to carry out the contract, Johnson on December 19th withdrew her deposit and the note and deed of trust. December 28th Johnson made written demand on defendant to consummate the sale. She refused. It is of some significance that on December 1st, the Office of Price Stabilization granted a 10-25 per cent increase in rent of the apartments and the value of the property had increased $20,000 over the contract price. Also, shortly after signing the agreement defendant phoned Gromeeko to get the contract back, offering him $2,000. He told her the deal was completed and she would have to go through with it, whereupon she answered "I guess I have to." Defendant testified that she would not have signed the revised property management agreement even if her attorney advised her to do so.

A part of the purchase and sale document was an agreement by defendant to pay Gromeeko and O'Keefe $5,000 for services rendered. These two agreed to share the commission with Cassidy.

The court directed the verdict in the Johnson action because Johnson refused to sign the management agreement as

presented by defendant, which it considered a breach of the contract, and also because plaintiff did not deposit the $35,000 and withdrew the documents in escrow. In the brokers' case it ruled that the sale was not consummated due to the purchaser's withdrawal and that therefore the brokers were not entitled to their commission.

## 1. First Case.

### Deed of Trust Clause.

In order to support the action of the trial court in directing a verdict in the first case, it must appear that as a matter of law, in view of the evidence, the deed of trust clause is susceptible of only one interpretation, namely, that it gave defendant the right to require additionally the property management agreement. (It should be noticed that the form of the deed of trust submitted contained a clause providing, in the event of default, for collection of rents by the beneficiary or her agent, and for property management.) Taking the clause alone, it is obvious that it cannot be so interpreted. "The terms of a writing are presumed to have been used in their primary and general acceptation . . ." (Code Civ. Proc., § 1861.) "Form of Deed of Trust" would ordinarily mean just what it says, which would not include an additional property management agreement. In the absence of evidence dehors the instrument, any other interpretation would mean that the parties intended by "Form of Deed of Trust" to include other instruments than a deed of trust and other matters not customarily included in a deed of trust. This would constitute merely an agreement to agree which in *Hiller* v. *King*, 105 Cal.App.2d 181, 190 [232 P.2d 905], we stated was very doubtful of enforcement. That the language would not include an additional agreement is the only interpretation of the clause itself which would make the clause "lawful, operative, definite, reasonable, and capable of being carried into effect . . . without violating the intention of the parties." (Civ. Code, § 1643.) Thus, if under the circumstances of this case, the clause must be interpreted as a matter of law, the court's interpretation was erroneous.

However, there was a fact situation which required submission of the case to the jury. Defendant testified in effect that she told both plaintiffs Johnson and Gromeeko prior to the signing of the sale agreement that the form of deed of trust which she would require would "be severe, and have appendages about the property management clause" and

that defendant would not "close the deal" unless plaintiff Johnson would sign such an instrument. Both the latter and Gromeeko denied this, and its truthfulness is somewhat questionable because of the fact that when defendant deposited with the title company the insurance company form of deed of trust it had no appendages to it, and had a property management clause in it, and that defendant did not produce the management agreement for approximately two days thereafter. However, it was for the jury to resolve the conflict in the evidence and to determine as a matter of fact whether the parties, under the circumstances, intended "Form of Deed of Trust" to include additionally anything in the nature of the property management agreement. ■ The language of *MacIntyre* v. *Angel*, 109 Cal.App.2d 425, is applicable here (p. 435 [240 P.2d 1047]): "As was said in *Walsh* v. *Walsh*, 18 Cal.2d 439, at 444 [116 P.2d 62]: ' "When the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, *the question of its meaning is one of fact* . . ." ' If the facts thus adduced were undisputed, it would be the function of the court, not the jury, to consider the writing in the light of such facts, but where (as in the instant case) those facts are in dispute (evidence by testimony which is in conflict), ' "and the meaning of the contract is to be determined one way in one view of the facts, and another way in accordance with another view of the facts, then the determination of the disputed fact must be left to the jury." ' (*Coats* v. *General Motors Corp.*, 3 Cal.App.2d 340, 355 [39 P.2d 838].)" ■ Annexing an unwarranted condition to an offer of performance is a refusal to perform, making tender and demand by the other party unnecessary. (See *Loop Building Co.* v. *DeCoo*, 97 Cal.App. 354, 362 [275 P. 881]; *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 646 [160 P.2d 804].) The situation here was similar to that in *Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, where the court said (p. 18 [206 P.2d 847, 9 A.L.R.2d 1297]): "Finally, the respondents argue that the 'appellants having themselves cancelled the contract cannot seek relief pursuant thereto.' They rely in this connection on Jeppi's withdrawal of his deposit and the title company's action in marking the escrow instructions 'cancelled.' But all of this occurred a week after the respondent corporation, by its telegram to the title company, repudiated the contract and notified Jeppi of the sale of the property to Young. Such acts clearly amounted to an anticipatory breach

of the contract, giving the appellants a cause of action and avoiding the necessity of continuing to tender performance of their obligation under the contract.''

The sale agreement is dated November 24th, although signed by the parties on November 28th, and gave ''10 days from the date of approval'' for the parties to perform. Defendant contends that time being of the essence the failure of plaintiff Johnson to deposit with the title company the $35,000 before December 4th constituted a breach of the contract by her, entitling defendant to refuse to perform. The evidence, however, would have supported a finding by the jury that the parties intended the 10 days to run from the actual date of signing. Moreover, at no time until suit was brought did defendant claim that plaintiff Johnson was in default for not depositing the $35,000 before December 4th (10 days from the date in the agreement). Defendant had orally agreed to deposit her deed by December 1st. This she did not do. She did not present the form of deed of trust which she was required to do under the contract, until between the 5th and 7th of December, and plaintiff promptly signed it. Two days later she presented the property management agreement without claiming any default on the part of plaintiff Johnson. Even as late as January 2d in a letter to plaintiff's attorney explaining her position the only default of plaintiff Johnson defendant claimed was her failure to sign the property management agreement. There was ample evidence from which a jury could have found that the 10-day provision was waived by defendant, and also that defendant refused performance prior to the expiration of 10 days whether the start of the period was November 24th or 28th. Defendant contends that as there was personal property involved in the sale, the agreement contemplated that a chattel mortgage would be executed by plaintiff Johnson. Assuming this to be true (although the agreement merely states that the note is to be ''secured by first Deed of Trust on same property'' and at no time did defendant demand such an instrument), that fact would not have required the execution of the property management agreement.

There is ample evidence from which the jury could have concluded that the property management agreement was not in the contemplation of the parties, that defendant never intended to go through with the sale, that in view of defendant's insistence that plaintiff Johnson sign the property manage-

ment agreement and defendant's refusal to put the deed in escrow, plaintiff Johnson was not required to deposit the $35,000, and that rather than plaintiff Johnson, as stated by the court, it was defendant who failed to comply with the terms of the sale agreement.

Plaintiff brokers testified that at the time of the breach the value of the property was $185,000, $20,000 more than the agreed price. This, of course, was substantial evidence. (See *People* v. *McReynolds,* 31 Cal.App.2d 219 [87 P.2d 734].) Defendant contends that under section 3306, Civil Code, such measure of damages applies only where the breach of the agreement is made in bad faith. ▌ A deliberate refusal to perform constitutes bad faith. (*Pixley* v. *First Federal Sav. & Loan Assn.,* 110 Cal.App.2d 427, 432 [243 P.2d 100].) ▌ The question of bad faith is a factual one. (*Engasser* v. *Jones,* 88 Cal.App.2d 171 [198 P.2d 546].) There was ample evidence here from which the jury could have found that defendant's refusal was in bad faith.

2. SECOND CASE.

In view of our holding as to the first case, it needs no discussion to show that the court's finding that the plaintiff brokers were not entitled to the agreed commission because the purchaser failed to perform the conditions precedent, is erroneous. It was for the jury to determine whether the evidence showed that the sale was not consummated because of the purchaser's failure to perform an agreed condition precedent or the defendant's refusal to proceed with the sale.

▌ " '. . . where the contract fixes the broker's right to remuneration upon his sale, if he shall produce a purchaser able and willing to buy, he has performed his part of the contract, and the owner's liability for his compensation or commission is complete, and cannot be avoided by any arbitrary or wanton refusal to consummate the sale.' (*Merriman* v. *Wickersham,* 141 Cal. 567, 570 [75 Pac. 180, 181].)" (*Coulter* v. *Howard,* 203 Cal. 17, 26 [262 P. 751].)

Both judgments are reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 30, 1955.