[Civ. No. 21185.   Second Dist., Div. One.   Jan. 17, 1956.]

WILLIAM H. RASMUSSEN, Respondent, v. PAUL MOE
et al., Appellants.

Clarence A. Singer and William Hicks for Appellants.

Neil N. Werb for Respondent.

FOURT, J.—Plaintiff brought two actions against the named defendants. The first was filed on or about April 24th, 1953, against Paul Moe and Sarah Moe, praying for specific performance and for damages arising out of the sale of certain real property. The second action was filed on or about July 21, 1953, against Paul Moe and Sarah Moe and John L. McElroy, praying for specific performance and the establishment of a constructive trust. John L. McElroy filed a cross-complaint against the Moes and the plaintiff, praying for money had and received. The cases were consolidated for trial.

At the conclusion of the plaintiff's case defendant McElroy moved the court for a nonsuit and the motion was granted. Judgment went in favor of the plaintiff and against the defendants Paul Moe and Sarah Moe for the sum of two thousand five hundred dollars ($2,500), plus certain interest, as will hereafter appear, and costs. Paul Moe and Sarah Moe have appealed.

The essential facts are as follows:

Paul Moe and Sarah Moe were, on the third day of March, 1953, the owners of certain real property in the county of Los Angeles, State of California. On that date the respondent and appellants entered into a thirty (30) day written escrow

agreement wherein the respondent agreed to buy and appellants agreed to sell the subject property for the sum of ten thousand dollars ($10,000). A copy of the written escrow agreement was set forth in each complaint and a copy was received in evidence. The California Bank was the escrow holder.

The respondent and appellants were present at the office of the escrow holder at the time of the signing of the escrow agreement and presumably read its terms and conditions. One William Bari was also present at the time the instructions were executed. Apparently he put up $250 of the $500 which was deposited in the first instance with the escrow holder; however, his name is not mentioned nor referred to in the instructions or agreement, and he did not sign the document.

On March 30th, 1953, and well within the time prescribed by the escrow agreement, the respondent complied with its terms and he deposited the balance of the purchase price. There was, therefore, on deposit with the escrow holder, within the required thirty (30) day period, the sum of $10,000 for use as set forth in the escrow.

On or about March 27, 1953, appellants, in spite of their written agreement, to sell the property to the respondent, made an agreement with John L. McElroy to sell the property to him. The price agreed upon between appellants and McElroy was in excess of the sales price agreed upon between the respondent and appellants. Appellants did, on April 2d, 1953, without notifying the respondent or the escrow holder, give a grant deed to McElroy. This grant deed incorrectly described the property.

On or about April 14, 1953, the appellants received a written notice from the respondent requesting that they comply with the escrow agreement. On April 29, 1953, appellants gave to McElroy another grant deed for the property described in the escrow instructions. The consideration paid by McElroy was in excess of $12,500. Appellants did not advise or inform the respondent of the deeds to McElroy. The $10,000 placed in escrow by the respondent remained there until the date of the judgment, which was December 28, 1954. During the thirty (30) day escrow period there were no communications either oral or written between the respondent and appellants.

The trial court found that the property in question was reasonably worth the sum of $12,500, at the time of the breach.

The court further found that appellants wilfully and in bad faith breached the agreement to convey the real property, by conveying the same to McElroy.

Damages were awarded the respondent for the difference between the contract price and the reasonable value of the property as of the date of the breach, plus interest on the $10,000, held by the escrow holder for the period of the holding, and costs of suit.

Appellants' first contention is that the escrow agreement was in reality a "sham" in that it contained the phrase, "Showing Title vested in William H. Rasmussen a married man, as his separate property, or his nominee," and was executed solely to protect William Bari in connection with his marital troubles. ■ The rule of the cases cited (*P. A. Smith Co.* v. *Muller,* 201 Cal. 219, 222 [256 P. 411]; *Cooper* v. *Cooper,* 3 Cal.App.2d 154, 158 [39 P.2d 820]; *Taylor* v. *Clarke,* 60 Cal.App.2d 438, 440 [140 P.2d 985]) by the appellants is to the effect that evidence that parties never intended a writing to constitute a contract, but that in lieu thereof another contract was entered into between them, is not objectionable under the parol evidence rule. The rule is that such evidence does not change a written contract by parol but serves to establish that such contract had no force, efficacy or effect. There is nothing in the record of this case which would, in anywise indicate that the respondent and appellants did not intend to enter into the contract they executed. The appellants had a parcel of real property which they desired to sell—they hired a broker—the property was advertised for sale—respondent was contacted by appellants' broker—respondent indicated a desire to buy the property and respondent and appellants met for the first time at the bank which was to be the escrow holder. There was also at this meeting William Bari and the real estate broker. It can be assumed that there must have been some discussion at that time. The respondent wanted to buy and the appellants wanted to sell at the price stated, namely $10,000.

Thereupon, the escrow agreement was prepared and the respondent and appellants signed the same. The discussions and negotiations were integrated and embodied in the written agreement. Not until the appellants received an offer for more money than the respondent had provided, did they consider, if at all, that there was no contract. ■ The rule forbidding the varying of the terms of a written instrument is based, fundamentally, upon the hypothesis that

the writing or set of writings is one which the parties have agreed upon as being the final and complete expression of their understanding, that, as Wigmore and others put it, there has been an integration. (*Lawrence* v. *Premier Indem. Assur. Co.,* 180 Cal. 688, 697 [182 P. 431].) The escrow agreement here, so far as can be determined, was the written memorial of the parties as to their understanding.

Appellants' next contention is that the trial court erred in finding that the respondent suffered any damages in any amount whatsoever. ▮ Section 3306 of the Civil Code provides as follows:

"Breach of agreement to convey real property. The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

This section, relating to detriment caused by breach of agreement to convey an estate in real property being a special provision, prevails over general statutes on damages. (*Boshes* v. *Miller,* 119 Cal.App.2d 332, 336 [259 P.2d 447].)

Here the respondent pleaded "bad faith" of the appellants, in that it was alleged that the conveyances by the appellants to McElroy were made with intent and purpose to defraud the respondent. ▮ The term bad faith, as used in the statute does not require a showing of fraud, but only of a deliberate refusal to perform without just cause or excuse. (*Pixley* v. *First Federal Sav. & Loan Assn.,* 110 Cal.App.2d 427, 432 [243 P.2d 100].) ▮ It is not necessary in order to establish bad faith within the meaning of this section, that the sellers be shown to have refused to go on with the transaction because of some gain which would accrue to them. It is sufficient that they refuse to convey, where through their own negligence, they have put it out of their power to fulfill the obligations of their contract. (*Shaw* v. *Union Escrow & Realty Co.,* 53 Cal.App. 66, 69 [200 P. 25].)

▮ Appellants next contend that they should have been permitted to introduce testimony of a conversation which took place about March 20, 1953, between one of the appellants and William Bari, to the effect that Bari had stated

that the agreement was cancelled. The escrow instructions of the buyer set forth in bold large type, ''No Notice, Demand or Change of Instructions Shall Be of Any Effect in this escrow unless given in writing by all parties affected thereby.'' The terms and conditions of the buyer's instructions were concurred in, approved and accepted in writing by the appellants. The trial judge sustained an objection to such testimony. Respondent was not present at the conversation in question, nor is it contended that he knew about the talk or had any knowledge of what was said. Bari was not a party to the lawsuit. The testimony was hearsay, and as such, and for other reasons, was properly refused. (*Dohrman* v. *J. B. Roof, Inc.*, 108 Cal.App. 456, 466 [291 P. 879].)

Appellants' next contention is that interest should not have been allowed upon the $10,000, deposited with the escrow holder. Section 3306 of the Civil Code specifically provides that interest on the price paid is recoverable. ■ Where sellers of real property refuse to perform, interest on the money deposited by the buyer in escrow is properly allowed. (*Smith* v. *Schrader*, 80 Cal.App. 478, 493 [251 P. 967].)

■ Appellants also contend that costs should not have been awarded to respondent. The total amount of the judgment was in excess of $3,000, and in any event, in an equity case, the court has the discretion to award costs. (*Estrin* v. *Fromsky*, 53 Cal.App.2d 253, 255 [127 P.2d 603].)

The judgment is affirmed.

White, P. J., and Doran, J., concurred.