[S. F. No. 19484.   In Bank.   Nov. 12, 1957.]

GEORGE F. FOX III et al., Respondents, v. JAMES P. ACED et al., Appellants.

Wexler & Wexler and Louis E. Wexler for Appellants.

Carr, McClellan, Ingersoll & Thompson, Robert T. Thompson and Richard C. Amick for Respondents.

McCOMB, J.—From a judgment in favor of plaintiffs for the sum of $2,950 after trial before the court without a jury, in an action to recover damages pursuant to the provisions of section 3306 of the Civil Code for an alleged breach of an agreement for the exchange of real property, defendants appeal.

On July 2, 1954, plaintiffs and defendants entered into an exchange agreement whereby plaintiffs, in exchange for certain industrial property, were to convey a certain house and lot to defendants and pay them $14,000 in cash. The industrial property was subject to a lease and purchase agreement between defendants as lessor-vendor and Sequoia Metalcraft Company and others (hereinafter referred to as "the tenant") as lessee-vendee. An addendum to the exchange agreement provided:

"In the event either First Party [plaintiffs] or Second Party [defendants] is unable to deliver his property within ninety (90) days from the date of this contract, upon the terms specified, then this contract shall be null and void and each party, in that event, shall hereby release the other of and from all liability hereunder.

"First Party agrees to pay Fourteen Thousand & No/100 ($14,000.00) Dollars cash on closing of this transaction. Rents to be prorated thirty (30) days from date of execution of this contract and payable on closing. Taxes, insurance, utilities and all other expenses relative to the upkeep of the subject properties are to be prorated as of the date of closing, which is to be no later than ninety (90) days from the date of this contract. Each party will pay expenses on property now owned by him until actual closing. Second Party agrees to complete all obligations now owing to lessee and to hold First Party harmless for any and all claims made by lessee thereunder."

The trial court found that (1) defendants breached the exchange agreement, and (2) "defendants' failure and refusal to perform said agreement on their part was deliberate, willful, capricious and without just cause and excuse, and without just or lawful reason therefor."

These questions are presented for our determination:

First. *Did defendants breach the exchange agreement?* *Yes.* Defendants claimed that they were unable within the 90-day period to deliver the industrial property "upon the terms specified" and that they were thereby released from all liability under the agreement by the provisions of the first sentence of the addendum set forth above.

Defendants were obligated under their lease-purchase agreement with the tenant to construct a building on the industrial property, and they predicate their inability to perform the exchange agreement upon the ground that the construction of this building had not been completed.

This presents the question: Was the completion of such construction among "the terms specified" in the exchange agreement?

It was not expressly so specified in that clause of the agreement whereby defendants promised to convey the industrial property "free and clear of all encumbrances excepting easements, restrictions and rights of way of record and said Lease Agreement and said purchase agreement [between defendants and the tenant] and tax liens which are the responsibility of the tenant."

An intent not to include such completion among "the terms specified" is indicated by defendants' promise, expressed in the last sentence of the addendum, "to complete all obligations now owing to lessee and to hold First Party [plaintiffs] harmless for any and all claims made by lessee thereunder." This promise was calculated to meet the situation that would obtain if, when the sale was consummated, the sellers had not yet completely performed all of their obligations toward the tenant, including completion of the building. It indicated that the sale was to proceed regardless of such completion. ▪ The addendum was written by defendants, and any ambiguity should be resolved against them.

▪ Likewise, the realtor through whom the parties negotiated testified that defendant James P. Aced explained to him that a lien filed against the property by one of the building contractors, Marshall Electric Company, was in litigation and Mr. Aced explained that he thought he could have this lien released quickly but wanted the 90 days to get rid of it, "that is why we set up the 90-day closing." It is thus clear that performance of defendants' obligation to the tenant to complete the building was not a condition of delivering the property.

The Marshall Electric Company lien was paid off nearly 30 days before the expiration of the 90-day period; the only other lien involved was that of the general building contractor, Carlray Company, in the amount of $10,000—$1,400 of which defendants disputed as being for extras ordered by the tenant. About two weeks before the expiration of the 90 days, plaintiffs paid the $1,400 on behalf of the tenant so that the only remaining lien on the 90th day was one which defendant James P. Aced testified he did not question. He admitted that he was agreeable to paying it and conceded that the lien could have been liquidated by using a portion of the money that plaintiffs had already put in escrow to defendants' credit.

Since defendants failed and refused to convey the property to plaintiffs, the finding of the trial court that they had breached the exchange agreement, in view of the above evidence, is amply supported by the record.

Second: *Was defendants' breach of their contract committed in "bad faith" within the meaning of that phrase as used in section 3306 of the Civil Code?*

*No.* ▮ Exemplary damages are not recoverable against a defendant who acts in good faith and under the advice of counsel. (*Selden* v. *Cashman*, 20 Cal. 56, 67 [81 Am.Dec. 93]; *Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 649 [198 P.2d 1]; *Fetterly* v. *Salyer*, 96 Cal.App.2d 240, 244 [5] [215 P.2d 64]; *Abbott* v. *'76 Land & Water Co.*, 103 Cal. 607, 609 [37 P. 527]; *Bonesteel* v. *Bonesteel*, 30 Wis. 511, 513; *Devenny* v. *The Mascotte*, 72 F. 684, 686; cf. *Johnson* v. *Southern Pac. Co.*, 157 Cal. 333, 338 [107 P. 611]; *Perry* v. *Washington Nat. Ins. Co.*, 14 Cal.App.2d 609, 617 [7] [58 P.2d 701, 59 P.2d 158]; *Haydel* v. *Morton*, 19 Cal.App.2d 697, 700 [4] [66 P.2d 204]; *United States* v. *Homestake Min. Co.*, 117 F. 481, 488 [54 C.C.A. 303]; 25 C.J.S. (1941), Damages, § 123e, p. 727.)

Section 3306 of the Civil Code reads: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; *but adding thereto, in case of bad faith,* the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." (Italics added.)

▮ The record discloses that for a number of weeks prior to July 2, 1954, the parties had been attempting through a mutual realtor to agree upon an exchange agreement that was satisfactory to all parties concerned.

The building on defendants' industrial property was constructed for them by Carlray Company for the specific use of the tenant. As a result of the construction, there existed at the time the exchange agreement was entered into two liens of record, as well as a dispute between defendants and Carlray Company concerning the noncompletion of the building in accordance with plans and specifications.

Plaintiffs on July 2, 1954, were aware of the existence of the two liens of record, as well as the controversy between defendants and Carlray Company. It was because of these

factors that the exchange agreement contained this provision: "In the event either First Party or Second Party is unable to deliver his property within ninety (90) days from the date of this contract, upon the terms specified, then this contract shall be null and void and each party, in that event, shall hereby release the other of and from all liability hereunder."

During the 90-day period referred to, defendant James P. Aced made repeated efforts to have the building completed, all without success. On September 15, 1954, plaintiffs deposited their money and deed with the title company. Defendants did not succeed in obtaining the completion of the building, and they did not, within said 90-day period or at any time thereafter, deliver their property to plaintiffs or deposit a deed thereto with the title company.

On numerous occasions during the foregoing transactions defendant James P. Aced consulted with an attorney, and when it became evident to him that the building would not be completed by the builder within the 90-day period, he sought his attorney's advice relative to his rights and obligations under his agreement with plaintiffs. He testified that "I was continually going to my attorney two or three times a week asking, 'How can I complete this deal,' and I was following his advice right down the line." The record also discloses that his attorney told him: "It is very clear to me that the second wire revokes the first wire giving you additional time, that Mr. Fox does not want to give you additional time and the 90-day period having expired the entire deal under the terms of the exchange agreement, by which it states that either party may withdraw after 90 days, has terminated and there is no further deal."

The evidence likewise discloses that James P. Aced relied and acted upon advice of counsel. Since the evidence discloses that defendants acted in good faith in relying upon the advice of counsel in refusing to perform their contract, the trial court's finding that they acted in bad faith within the meaning of section 3306 of the Civil Code is not sustained. Hence, to predicate damages upon the bad faith of defendants was erroneous.

The judgment is reversed.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I agree with the first point in the majority opinion that it was not necessary to complete the building before defendant

was obligated to transfer the property, but cannot agree that there was insufficient evidence to show bad faith on the part of defendant as used in section 3306 of the Civil Code quoted in the majority opinion. The trial court found that there was bad faith on defendant's part in refusing to perform as pointed out in the majority opinion and, in my opinion, the evidence was sufficient to support that finding.

Assuming that advice of counsel, which is followed, shows good faith and there is evidence that such advice was given and followed, there is evidence in the record here which clearly shows bad faith. Mr. Ross, the real estate broker handling the deal for both parties, testified that during the 90-day period defendant refused to complete the deal unless plaintiffs paid for a rock fill in connection with the building which plaintiffs were not obligated to do; that plaintiffs would waive completion of the building; that defendant was not "particularly interested" in having a conference with his counsel and Ross; that he wanted a release from the tenant of his property under the lease and was told that the tenant was willing to accept the buildings; that defendant said he "wouldn't close [the deal] *in any event*. He said, 'There is not only the question of the rock fill which hasn't been settled, but' he said that *he wasn't going to do business with Mr. Fox* [plaintiff]. I asked Mr. Aced, 'Well, is this just a grudge?' and he said, 'No, but *I just don't like Mr. Fox.*'

"I asked Mr. Aced, *'Would you close this transaction with anybody else?'* He said, *'Anybody else but Mr. Fox.'*

"We spoke on, and I asked Mr. Aced just what it was that he wanted at this time to close the deal with Mr. Fox, didn't he have any idea of what he wanted. *He thought for a minute, and he wrote down seven points which he wanted to close the deal with Mr. Fox, and it amounted to approximately $5,000 or more.*" (Emphasis added.) The latter things plaintiff was not required to do. Defendant knew that the liens on the property could be removed by instructing the escrow agent to withhold them from the money deposited in escrow by plaintiff. The evidence is clear that defendant deliberately refused to carry out the agreement. This evidence was weighed by the trial court against the evidence that defendant acted on the advice of counsel. Hence the judgment is supported by the evidence. The evidence that defendant acted on the advice of counsel obviously could have been disbelieved by the trial court.

It must be remembered that the test of bad faith under

section 3306 of the Civil Code, *supra,* is whether there is a deliberate refusal to perform without just cause or excuse (*Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511 [55 P.2d 859] ; *Engasser* v. *Jones,* 88 Cal.App.2d 171 [198 P.2d 546] ; *Pixley* v. *First Federal Sav. & Loan Assn.,* 110 Cal.App.2d 427 [243 P.2d 100] ; *Johnson* v. *Goldberg,* 130 Cal.App.2d 571 [279 P.2d 131] ; *Rasmussen* v. *Moe,* 138 Cal.App.2d 499 [292 P.2d 226]) and whether there is good or bad faith is a question of fact (*Rasmussen* v. *Moe, supra,* 138 Cal.App.2d 499).

As stated, proof that a party acted on the advice of counsel may be a factor in establishing the defense of good faith. However, in situations where the advice of counsel is a defense against punitive damages, malicious prosecution, and some other torts, there must be a full and fair disclosure of all the facts to counsel. For illustration it is said : ''Advice of counsel, to be admissible evidence in mitigation of damages in any case, must appear to have been given upon a full and fair statement of the facts or of such of them as were material to the question on which counsel was consulted.'' (15 Am.Jur., Damages, § 354.) And in regard to malicious prosecution : ''The solicitation of advice of counsel and the fact that in instituting the action complained of one acted on the opinion and advice of counsel may constitute a complete defense to an action for malicious prosecution, provided the opinion was based *on a full and fair statement of the facts or on knowledge derived from independent investigation, and was sought and acted on in good faith.''* (Emphasis added; 32 Cal.Jur.2d, Malicious Prosecution, § 25.) ''In order to establish the defence of advice of counsel, the defendant in an action for malicious prosecution must show that the advice relied on was given by counsel after a full and fair disclosure, without any suppression, evasion, or falsehood, of all the facts known to the complainant, or which he should have known, tending to prove or disprove his claim or the crime charged.'' (*Ibid,* § 29.) ''The rule that advice of counsel is a defense to an action of malicious prosecution is qualified by the requirement that the element of good faith be present throughout. Advice of counsel, accordingly, affords no defense unless it is sought in good faith and not as a mere cloak to protect oneself against such an action or to refute the theory of malice. Such advice must have been based on the entire good faith of the defendant in the presentation of his facts. It must further appear, affirmatively, that the defendant acted on the

advice in good faith.'' (*Ibid.*, § 30.) It is clear that under the evidence in the instant case the trial court could find, as it did, that there was not a fair or full disclosure of the facts by defendant to his counsel in good faith. It certainly cannot be said that the evidence on this issue was undisputed. Indeed defendant's main concern with his counsel was in connection with his dealings with his lessee rather than plaintiff. Moreover it should be observed that under section 3306 of the Civil Code, plaintiff is not being allowed punitive damages if there is bad faith; the damages recoverable are still *actual* damages suffered. Hence there is more reason why the advice of counsel factor in ascertaining good or bad faith should meet all the safeguards placed around it in other situations. Such is not the state of the record here.

I would, therefore, affirm the judgment.

Gibson, C. J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied December 11, 1957. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.