**H.H. HENDERSON, Dwaine Lee Henderson, et al., etc., (Zettie Mae Henderson, Administratrix of the estate of H.H. Henderson, deceased, substituted in the place and stead of H.H. Henderson, deceased.), Plaintiffs-Appellees,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant.**

**No. 81–4393.**

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1983.

---

Carey R. Varnado, S. Wayne Easterling, Hattiesburg, Miss., for defendant-appellant.

Guy M. Walker, Laurel, Miss., J.C. Martin, Jr., Waynesboro, Miss., Horton Hillman, Leakesville, Miss., for plaintiffs-appellees.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

REAVLEY, Circuit Judge:

This case reaches this court for the second time. In our prior opinion, *Henderson v. United States Fidelity & Guaranty Co.,* 620 F.2d 530 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (*"Henderson I"*) we affirmed a jury verdict against USF & G and remanded for a trial on punitive damages. We now affirm the subsequent judgment entered on jury findings of that issue.

## History

*Henderson I* decided whether H.H. Henderson had a USF & G liability policy for $50,000 in effect when Henderson's truck collided with Stevison's car, causing Stevison's death. Stevison's estate and Dwaine Henderson, driver of the truck, were co-plaintiffs. The central issue was the date of mailing of a cancellation notice. Henderson claimed that he received the notice several days after the accident. USF & G argued that the notice was dated October 7, fully six weeks before the accident and that the policy was thereby cancelled. The jury found for plaintiffs, and we upheld this finding stating

> [t]he jury was free to find that USF & G had not actually sent notice on that date, but had back-dated the notice and mailed it after learning of the accident.

*Id.* at 535.

The trial court in *Henderson I* refused to allow plaintiffs to submit evidence on the punitive damages question. We reversed and remanded for trial on this issue.

During the litigation with the Stevison estate, Henderson was unable to obtain a copy of his $50,000 liability policy. USF & G admitted the existence of a different $10,000 liability policy, but steadfastly denied the existence of the $50,000 policy. Henderson remained convinced that one existed because he had been required to obtain the coverage as part of his logging operations. His attorneys filed a separate suit for discovery in Mississippi state court. This suit was filed on a premises policy because Henderson's attorney thought that the liability coverage might be a rider to that policy. In the course of this suit, Henderson asked an interrogatory concerning the existence of "documents, memoranda and records regarding policies of insurance issued or to be issued by your agency ...." Sigler, the USF & G general agent stated that "I have no knowledge of any other documents or memoranda ... affecting the subject matter of these interrogatories." Since this suit failed to turn up the $50,000 policy, Henderson was unable to take advantage of a $40,000 settlement offer by

Stevison's estate. A verdict of $100,000 resulted, destroying Henderson's business and credit.

This suit was then filed in federal district court in Mississippi. Again, in interrogatories Henderson asked: "State the maximum coverage you had covering your insured Henry Hosea Henderson during the immediate year prior to 11/23/71 [the date of the accident] . . . ." Defendant again denied the existence of any such policy.[1] It was not until the deposition of Sigler and production of his records that plaintiff obtained a copy of the correct policy. We stated:

> The evidence could support a jury verdict that USF & G withheld the policy at the time of the suit over the accident in the face of Mr. Henderson's request for copies of all his policies.

*Id.* at 537. Upon remand, the jury concluded that USF & G was indeed liable for punitive damages.

### This Appeal

USF & G makes these complaints on this appeal: (1) exclusion of testimony regarding the mailing of notice, (2) remarks by the trial judge, (3) the charge to the jury, and (4) rejection of its defense that it acted on advice of counsel.

### A. *Exclusion of Testimony and Collateral Estoppel*

■ Appellant challenges the exclusion of testimony of certain witnesses. Although no offers of proof were made, we assume that this testimony related to the mailing of the cancellation notice. It could have been no more than cumulative. Miss Joiner, Sigler's secretary, testified that she typed and mailed the cancellation notice on October 7, 1971.[2] Sigler's entire prior testimony was admitted. Any evidence excluded would not require reversal. Fed.R.Civ.P. 61.

■ There is, however, a more fundamental flaw in appellant's approach. Under Mississippi law, it is not necessary for the cancellation notice to be actually received by the insured. Instead, the policy is cancelled once the notice is deposited in the mail by the insurer. *Employers' Mutual Casualty Co. v. Nosser,* 250 Miss. 342, 168 So.2d 119 (1964); Miss.Code § 83–11–9 (1972). The jury in *Henderson I* necessarily found that the notice was not sent until after the accident. USF & G is foreclosed from relitigating this issue, on both res judicata and collateral estoppel grounds.[3]

■ USF & G argues that its good faith subjective belief of the policy's cancellation remains relevant to the issue of punitive

---

1. Plaintiff requested information on coverage of all vehicles. Defendant responded that there was no policy as to the particular truck in the accident. One of USF & G's contentions in *Henderson I* was that the truck involved in the accident was not a proper replacement vehicle under the policy terms. Thus, in a highly technical sense this answer may not have been untrue, but it was so misleading as to constitute a denial of the policy's existence.

2. Appellant even secured an instruction in the second trial stating that if the jury found that notice was sent on October 7, 1971, then it should rule for defendant.

3. Res judicata is sometimes referred to as claim preclusion. *White v. World Finance of Meridian, Inc.,* 653 F.2d 147 (5th Cir.1981). The test for application of res judicata is

> a prior suit which concluded with a final judgment on the merits rendered by a court of competent jurisdiction . . . between the same parties on the same action.

*Id.* at 149–50, *quoting Commercial Box and Lumber Co. v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir.1980). This test is met here. *Henderson I* involved the same parties. A final judgment on USF & G's claim that the policy was cancelled was rendered. USF & G is attempting to relitigate, albeit obliquely, this same claim. Res judicata therefore applies.

Collateral estoppel precludes relitigation of issues, not claims. *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir.1982). The test is whether

> a right, question or fact [is] distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction. . . .

*Id.* at 338. USF & G attempted to relitigate the question of whether the cancellation notice was sent. As the text indicates this fact was directly in issue in *Henderson I* and was necessary for the jury's finding of coverage. USF & G is therefore collaterally estopped from asserting that the notice was mailed.

damages. Attractive as this argument appears it does not withstand analysis. First, USF & G was not entitled to predicate the existence of a good faith subjective belief upon acts previously found not to have occurred. Second, even if USF & G did believe that the notice was sent, that belief was not dispositive. Coverage was previously decided and, on remand, the issue went to USF & G's failure to produce the $50,000 policy in the face of the interrogatories and requests for *all* of Henderson's policies. A belief that the policy had been cancelled was no explanation for denying that it existed.

## B. *Remarks of the Trial Judge*

Appellant also complains of certain "remarks" by Judge Cox. One statement pertained to the irrelevance of USF & G's testimony regarding whether notice was mailed. The other statement was that even if notice was mailed, it was irrelevant because the insured never received it. USF & G argues that this is contrary to Miss.Code § 83–11–9 (1972), and that Judge Cox's remarks misled the jury into believing that the relevant issue was USF & G's good faith belief that Henderson received the notice, not its good faith belief that it mailed the notice.

■ We reject this contention for several reasons. First, as stated previously, whether notice was given was already conclusively determined in *Henderson I.* Second, Judge Cox's remarks were not prejudicial to defendant. Both of these remarks were made in ruling upon objections and were not addressed to the jury. The first remark was clearly accurate. As to the second remark, Judge Cox ruled repeatedly on similar objections throughout the trial, and it was highly improbable that the jury would seize upon this one isolated statement to reformulate this purported issue. And if any misimpression was given to the jurors, it was corrected by the court's charge. The court emphasized that the law which the jury was to follow was contained in its instructions. One of the instructions stated that if the notice was mailed (not received), then the policy was cancelled.

## C. *The Charge*

■ USF & G next challenges the charge to the jury, alleging that it: (1) amounted to practically directing a verdict against USF & G and (2) contained improper elements of damages. We decline to reach the merits of these arguments because appellant failed to object to the court's charge. Fed.R.Civ.P. 51. Our review is therefore precluded. While we recognize a plain error exception to this rule, *Liner v. J.B. Talley & Co.,* 618 F.2d 327, 329 (5th Cir.1980), we do not think, viewing the charge as a whole, that any error here is "so fundamental as to result in a miscarriage of justice." *Delancey v. Motichek Towing Service, Inc.,* 427 F.2d 897, 901 (5th Cir. 1970).

## D. *Advice of Counsel*

■ Appellant's last argument is that reliance on advice of counsel precludes liability for punitive damages. We agree that good faith reliance upon advice of counsel may prevent imposition of punitive damages. *Fox v. Aced,* 49 Cal.2d 381, 317 P.2d 608 (1957); 22 Am.Jur.2d, Damages § 253 (1965).

■ This defense might have succeeded if USF & G had produced the policy and then refused to pay, relying on advice of counsel that the policy had been cancelled. But this is not the case here. USF & G chose to hide the policy and deny its existence. As we said in *Henderson I,*

> USF & G's acts in hiding the policy render ineffectual any other defenses it had to the punitive damages claim.

620 F.2d at 537. And even if the defense were available, the record is totally devoid of any advice of counsel relating to the production of the $50,000 policy. The only testimony is by Barnes, a claims inspector, that Roberts, USF & G's counsel, told him that there was only the $10,000 policy.

**114**

Roberts, also USF & G's trial counsel, chose not to testify. There was no testimony concerning any advice of counsel regarding USF & G's duty to produce for inspection a copy of the supposedly cancelled policy. We therefore overrule this point.[4]

The judgment is AFFIRMED.

---

4. Appellant advanced a number of arguments in its initial brief that appear to have been abandoned at oral argument and in its supplemental brief. We note however, that none of these arguments are persuasive.

Appellant's statute of fraud argument is foreclosed by *Henderson I* and its finding that coverage existed. Appellant's claim that the jury's award of $225,000 is excessive is also without merit. *See Pellegrin v. J. Ray McDermott & Co.,* 504 F.2d 884 (5th Cir.1974) (granting of a new trial on excessive damages grounds is matter for trial court and not subject to review except for grave abuse of discretion).

Appellant devoted much of its brief to the related arguments that: (1) H.H. Henderson's death abated his cause of action; and (2) even if it did survive his death, since no motion for "revival" was made, the suit should be dismissed. With regard to the first point, we note that Mississippi law does allow a punitive damages action to be prosecuted by the deceased's representatives. *Wagner v. Gibbs,* 80 Miss. 53, 31 So. 434 (1902).

With regard to the "revival" motion, we first note that Fed.R.Civ.P. 25(a) and Fed.R.App.P. 43(a) govern, not Mississippi law. The first suggestion of Henderson's death upon the record appears in a July 17, 1981 motion regarding whether his death abated the punitive damages action. No Rule 25 motion for substitution was made, and the case proceeded to trial. Judgment was entered September 9, 1981 and after denial of a motion for new trial, notice of appeal was filed September 17, 1981. At oral argument, we entertained a motion for substitution under F.R.A.P. 43, which we granted.

At first blush, this procedure might appear erroneous. F.R.A.P. 43 states that "if a party dies *after* a notice of appeal is filed or while a proceeding is otherwise pending, the personal representative may be substituted as a party ...." Since Henderson died prior to the notice of appeal, it would appear that F.R.C.P. 25(a) with its 90 day period applies, obliging us to dismiss Henderson and address whether the other parties on this appeal are Henderson's successors in interest to his punitive damages claim.

Given the particular facts of this case however, we deem it appropriate to treat Henderson's death as if it occurred after the notice of appeal. The first mention on the record of Henderson's death occurred a little over a month prior to the second trial. When notice of appeal was filed, plaintiff still had 28 days left in which to correct his mistake and make a motion for substitution. Yet the filing of the notice of appeal deprived the district court of jurisdiction to hear such a motion. *United States v. Hitchmon,* 602 F.2d 689, 692 (5th Cir.1979) (en banc).

This result is strengthened by the fact that until the motion for new trial, defendants had never asserted that the coplaintiffs did not have an independent right to pursue the punitive damages or insurance coverage claims. Viewed in its procedural context, *i.e.* upon remand after two trials had been concluded, the motion here seems to be functionally equivalent to a motion to dismiss for lack of standing. Such a motion should have been brought long before the motion for new trial. *See Myers v. Manchester Insur. & Indemnity Co.,* 572 F.2d 134 (5th Cir.1978) (objection to a party's capacity to sue is waivable).